UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

APRIL BALDI,

                                    Plaintiff,

                -against-

MAGGIO DATA FORMS PRINTING LTD., JOHN
CURTIN, and JOSEPH CAPUANO

                                    Defendants.

Case No.: 19 CV 07111

**COMPLAINT**

Plaintiff, by her attorneys Virginia & Ambinder LLP, hereby alleges upon knowledge to herself and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1.      This action is brought against Maggio Data Forms Printing Ltd. (hereinafter collectively "Maggio"), John Curtin, and Joseph Capuano (collectively referred to as "Defendants"), for violations of Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000e-2 *et seq.* (hereinafter "Title VII") and New York State Human Rights Law, Executive Law § 296 *et seq.* (hereinafter "NYSHRL") on the basis of sexual harassment and retaliation.

2.      Plaintiff has initiated this action seeking loss of past and future earnings, compensatory and punitive damages, interest, attorneys' fees and costs.

**JURISDICTION**

3.      Jurisdiction of this Court is invoked pursuant to Title VII and 28 U.S.C. §§ 1331 and 1337. This court also has supplemental jurisdiction under 28 U.S.C. § 1367 for claims brought under the NYSHRL.

4.      The Equal Employment Opportunities Commission ("EEOC") received Plaintiff's formal charge of discrimination on September 5, 2017.

5.      Plaintiff's claim was subsequently transferred by the EEOC to the New York State Division of Human Rights ("DHR") in or about September 2018.

6.      On September 9, 2019, DHR issued a finding of probable cause.

7.      On December 3, 2019, the DHR dismissed the action for administrative convenience so that Plaintiff can pursue remedies in federal court where all the issues concerning the question of discrimination charged can be resolved. A copy of the Order is annexed hereto as Exhibit A.

## VENUE

8.      Venue for bringing this action in the Eastern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## PARTIES

9.      Plaintiff April Baldi is an individual residing in the State of New York who was formerly employed by Defendants.

10.     Defendant Maggio Data Forms Printing Ltd. ("Maggio") is a business corporation incorporated under the laws of the State of New York, with its principal location at 1735 Expressway Dr. North, Hauppauge, New York 11788.

11.     Upon information and belief, Maggio employs over 100 individuals.

12.     Defendant John Curtin is an individual residing in the State of New York.

13.     Defendant Joseph Capuano is an individual residing in the State of New York.

14.     Defendant Joseph Capuano is also known by the name "Joe."

15.     Defendants Curtin and Capuano are currently employed by Maggio at 1735 Expressway Dr. North, Hauppauge, New York 11788.

**STATEMENT OF FACTS**

16.     Plaintiff was employed by Defendants as a receptionist from approximately September 2013 to March 17, 2017.

17.     Throughout her employment, Plaintiff was subject to severe and pervasive sexual harassment while working for Maggio Data Forms Printing, Ltd ("Maggio").

18.     The sexual harassment Plaintiff endured was a direct result of the sexually charged atmosphere and corporate culture at Maggio, a culture perpetrated by Maggio's senior managers.

19.     Plaintiff's refusal to participate in this sex culture – and specifically welcome the sexual advances from her managers John Curtin ("Curtin") and Joseph Capuano ("Capuano") – is what led to her termination.

20.     John Curtin, the VP of Manufacturing/Plant Manager, began making sexual comments and sexually harassing Plaintiff about six (6) to seven (7) months after Plaintiff started working for Maggio.

21.     Curtin would ask Plaintiff to make coffee for him five to six times per day because he used it as an opportunity to stand very close to her, to touch her hair, and rub her shoulders.

22.     Curtin would stand inappropriately close to Plaintiff and tell her she looks "so hot" or that her "shirt looks hot" on her.

23.     Curtin would repeatedly make jokes about how he wanted Plaintiff to "hook up" with him and would ask Plaintiff and a female co-worker to have a "three way" with him.

24.     Curtin would make inappropriate sexualized jokes where he would ask Plaintiff "guess where my hand is?" And his hand would be on a female co-worker's butt.

25.     Curtin occasionally told Plaintiff that he had dreams about her and that he would "wake up with a pimple," alluding to the fact that he was sexually interested in Plaintiff.

26.     On more than one occasion, Curtin put his hands in Plaintiff's hair and pulled it, and when she was visibly uncomfortable and shocked, he asked her "what's the matter? You don't like your hair being pulled?"

27.     On another occasion, Curtin came behind Plaintiff when she was standing next to a printer and slapped her butt with his hand.

28.     Plaintiff was extremely shocked and embarrassed when Curtin slapped her butt. After a couple of weeks, she confronted Curtin about what had happened, but Curtin denied touching her.

29.     The atmosphere in the office often involved sexually charged conversation between the management/owners of the office, namely Curtin, Joe Capuano (Plaintiff's direct supervisor) and Robert Maggio (President of Maggio).

30.     Curtin, Capuano and Robert Maggio often referred to women in sexual and inappropriate ways and joked around about having sex with them.

31.     Plaintiff observed Curtin touch the butts of at least three different female employees.

32.     Curtin also had sex with one of Plaintiff's female co-workers (hereinafter referred to as "Female Co-Worker") on and off for years.

33.     Plaintiff recalls seeing Curtin and Robert Maggio making out with female employees at the Maggio's holiday parties.  During the holiday party in either 2014 or 2015, Robert Maggio was having a three-way make-out session with two female employees.

34.     On December 22, 2016, Plaintiff attended Maggio's holiday party.

35.     During the party Curtin followed Plaintiff into the bathroom.

36.     Curtin knocked on the stall door while Plaintiff was peeing, but Plaintiff ignored his knock.

37.     Curtin waited outside the women's bathroom for Plaintiff to come out.

38.     When Plaintiff finally came out, Curtin attempted to bring her into an empty office with him.

39.     Plaintiff refused Curtin's advances.

40.     When Plaintiff refused Curtin said, "it will be all pleasure for you."

41.     Plaintiff was very uncomfortable with the situation and felt scared and violated.

42.     Plaintiff immediately texted Female Co-Worker:

| | |
|---|---|
| Plaintiff: | "john [Curtin] just tired with me i said no." "wtfffffff" |
| Female Co-Worker: | "Leave lol its gonna be bad" |
| Plaintiff: | "he was stalking in the bathroom and i ignored his knock" |
| Female Co-Worker: | "Hes fucked up" |
| Plaintiff | "and then came in again after i was peeing and then walked out and he tried briging me in debs office." |

43.     In the same text conversation, Female Co-Worker warns Plaintiff "go home its not gonna be just him it will be others next."

44.     Afraid for her safety, Plaintiff went to Joe Capuano, Plaintiff's direct supervisor and Customer Service Manager for Maggio.

45.     Plaintiff told Capuano what happened with Curtin and asked Capuano to walk her to her car.

46.     On their way to Plaintiff's car, Curtin drove by in his car, honked his horn, rolled down the window and yelled "It's your last chance! But you would rather have Joe."

47.     No legitimate investigation into Curtin's actions ever took place, as Plaintiff was never questioned.

48.     On December 28, 2016, six days after Plaintiff rejected Curtin at the holiday party, Plaintiff was issued a notice informing her that she can no longer take any "unscheduled days off until September 30, 2017."

49.     From the time Plaintiff started working at Maggio in 2013, Maggio's practice was to allow its employees to use vacation time to cover unscheduled absences.

50.     Maggio ceased allowing Plaintiff to use vacation days to cover an unanticipated sick day.

51.     The notice was issued in retaliation for Plaintiff's refusal to participate in Maggio's sex culture and to encourage Plaintiff to change her mind and participate in it.

52.     In September 2016, prior to the holiday party, Plaintiff was issued a disciplinary notice stating she had 22 unscheduled absences when she is only permitted five. Despite being 17 absences over the limit, Maggio never stopped allowing Plaintiff to use vacation days to cover unscheduled absences and only issued her a warning at the end of her benefits year (i.e., September of each year).

53.     After the 2016 holiday party, Plaintiff was issued the notice the moment she reached her maximum unscheduled absences, in December 2016 two months after her benefits year started.

54.     Two days after receiving the December 28 notice, Capuano, the manager Plaintiff went to for help, made sexual advances on Plaintiff.

55.     Capuano, like Curtin, also creepily lingered by Plaintiff's desk.

56.     Plaintiff rejected Capuano's advances.

57.     In response to Plaintiff's rejection, Capuano texted Plaintiff, "You girls are all alike. You never take the opportunity when it's there. Sleep tight sleeping beauty."

58.     On Friday January 13, 2017 at 7:25 P.M., Capuano texted Plaintiff "Where you at girly girl".  On Friday night January 20, 2017 at 8:18 P.M., Capuano texted Plaintiff "Wat up baby. Did you get your nails done?"

59.     Plaintiff ignored both text messages from Capuano.

60.     On January 23, 2017, Plaintiff requested a vacation day to avoid an unscheduled absence in case she stayed sick.  Capuano granted her request for a vacation day but wrote "Gee, it's a good thing I answer text messages unlike some people."   When Plaintiff asked what he meant by that, Capuano wrote, "I texted you Friday and you never responded. No worries. I put you in for a vacation day. Feel better."

61.     On February 22, 2017, Plaintiff was stuck in traffic. She called Capuano to let him know she was going to be a little late. Capuano told her not to come in.  When Plaintiff got into the office at 8:36 AM, six minutes after her shift started, Capuano sent her home.

62.     Other employees that came late on February 22, 2017, including Female Co-Worker, were not reprimanded.

63.     Upon information and belief, because Female Co-Worker participated in Maggio's sex culture, she was permitted to show up to work whenever she wanted and was not subject to the same rules as everyone else.

64.     On March 17, 2017, Plaintiff asked to come in at 10:00 a.m. because her stomach was hurting in the morning. She asked Capuano if she could use one of her remaining vacation days. Capuano told her to come in at 10:00 AM.  When Plaintiff got to work, Capuano fired her.

65.     Upon information and belief, Defendants John Curtin and Joe Capuano, aided, abetted, incited, compelled and/or coerced the undertaking of discriminatory actions against Plaintiff.

66.     Upon information and belief, Defendants John Curtin and Joe Capuano knew or should have known, of the discriminatory conduct against Plaintiff.

67.     Upon information and belief, Defendants John Curtin and Joe Capuano took part in or acquiesced in the unlawful harassment and discriminatory conduct, and/or failed to take immediate and appropriate corrective action.

68.     On September 5, 2017, the EEOC received Plaintiff's Charge of Discrimination against Defendants.

69.     The claim was subsequently transferred to NYS DHR in or about September 2008.

70.     After investigation, the DHR determined that probable cause exists to believe that Maggio and John Curtin engaged in or are engaging in unlawful discriminatory conduct.

## FIRST CAUSE OF ACTION:
## TITLE VII OF THE CIVIL RIGHTS ACT
## <u>(Discrimination Based on Sex in Violation of Title VII)</u>

71.     Plaintiff repeats and re-alleges the allegations set forth above.

72.     At all relevant times, Plaintiff was an "employee" and Defendants were "employers" within the meaning of Title VII pursuant to 42 U.S.C. §§ 2000e-2(a) and (b).

73.      Pursuant to 42 U.S.C. §§ 2000e-2, it is an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

74.     Defendants discriminated against Plaintiff by subjecting Plaintiff to a hostile work environment based on her sex in violation of 42 U.S.C. §§ 2000e, *et seq*.

75.     Plaintiff is a woman and therefore a member of a protected class under Title VII.

76.     Plaintiff was discriminated against because of her gender, in the form of repeated sexual harassment while employed by Defendants.

77.     Defendants created a work environment that was permeated with discriminatory intimidation and was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

78.     Defendants knew or should have known about the sexual harassment in the workplace.

79.     Defendants failed and refused to take appropriate action to end the sexual harassment to which Plaintiff was subject.

80.     As a proximate result of Defendants' discriminatory policies, practices and conduct, as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income.

81.     As a further proximate of Defendants' unlawful policies, practices and conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anxiety, and mental anguish.

82.     The conduct of Defendants was done in conscious disregard of Plaintiff's rights.

83.     Plaintiff is entitled to actual, compensatory and punitive damages in amounts to be determined at trial, plus attorneys' fees, costs, and interest.

## SECOND CAUSE OF ACTION:
## TITLE VII OF THE CIVIL RIGHTS ACT
### (Retaliation in Violation of Title VII)

84.     Plaintiff repeats and re-alleges the allegations set forth above.

85.     Plaintiff is protected from retaliation and retaliatory discharge under Title VII 42 U.S.C. 2000e-3(a) which provides that it shall be unlawful discriminatory practice for an employer: "to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

86.     Plaintiff's complaints and objections regarding the severe and pervasive hostile work environment she was subjected to during her employment were protected activities under Title VII.

87.     Defendants engaged in an unlawful discriminatory practice in violation of the Title VII by retaliating against Plaintiff and discharging Plaintiff because she opposed and refused to participate in Defendants' hostile work environment.

88.     As a proximate result of Defendants' discriminatory policies, practices and conduct, as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income.

89.     As a further proximate of Defendants' unlawful policies, practices and conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anxiety, and mental anguish.

90.     The conduct of Defendants was done in conscious disregard of Plaintiff's rights.

91.     Plaintiff is entitled to actual, compensatory and punitive damages in amounts to be determined at trial, plus attorneys' fees, costs, and interest.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS: NEW YORK STATE HUMAN RIGHTS LAW (Discrimination Based on Sex in Violation of NYSHRL)

92.     Plaintiff repeats and re-alleges the allegations set forth above.

93.     At all relevant times, Plaintiff was an "employee" and Defendants were "employers" within the meaning of NYSHRL § 296 *et seq*.

94.      Pursuant to NYSHRL § 296, "[i]t shall be unlawful discriminatory practice: '(h) For an employer … to subject any individual to harassment because of an individual's . . . sex . . . regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment" based on an individual's sex.

95.     Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment on the basis of Plaintiff's sex in violation of § 296 of the NYSHRL.

96.     Plaintiff is a woman and therefore a member of a protected class under the NYSHRL.

97.     Plaintiff was discriminated against because of her sex, in the form of repeated sexual harassment while employed by Defendants.

98.     Defendants created a work environment that was permeated with discriminatory intimidation and was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

99.     Defendants knew or should have known about the sexual harassment in the workplace.

100.    The sexual harassment cannot be considered petty slights or trivial inconveniences.

101.    Defendants failed and refused to take appropriate action to end the sexual harassment to which Plaintiff was subject.

102.    As a proximate result of Defendants' discriminatory policies, practices and conduct, as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income.

103.    As a further proximate of Defendants' unlawful policies, practices and conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anxiety, and mental anguish.

104.    The conduct of Defendants was done in conscious disregard of Plaintiff's rights.

105.     Plaintiff is entitled to actual and compensatory and punitive damages in amounts to be determined at trial, plus attorneys' fees, costs, and interest.

### FOURTH CAUSE OF ACTION:
### NEW YORK STATE HUMAN RIGHTS LAW
### (Retaliation in Violation of NYSHRL)

106.     Plaintiff repeats and re-alleges the allegations set forth above.

107.     Plaintiff is protected from retaliation and retaliatory discharge under NYSHRL § 296(1)(e), which provides that it shall be unlawful discriminatory practice: "For any employer … to discharge, expel or otherwise discriminate against any person because her or she has opposed any practices forbidden under this article …."

108.     Plaintiff's complaints and objections regarding the hostile work environment she was subjected to during her employment were protected activities under the NYSHRL.

109.     Defendants engaged in an unlawful discriminatory practice in violation of the NYSHRL by retaliating against Plaintiff and discharging Plaintiff because she opposed Defendants' hostile work environment.

110.     As a proximate result of Defendants' discriminatory policies, practices and conduct, as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income.

111.     As a further proximate of Defendants' unlawful policies, practices and conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anxiety, and mental anguish.

112.     The conduct of Defendants was done in conscious disregard of Plaintiff's rights.

113.     Plaintiff is entitled to actual and compensatory damages in amounts to be determined at trial, plus attorneys' fees, costs, and interest.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

(1) on the first cause of action against Defendants, Plaintiff seeks all damages permitted under Title VII plus interest, attorneys' fees and costs;

(2) on the second cause of action against Defendants, Plaintiff seeks all damages permitted under Title VII plus interest, attorneys' fees and costs;

(3) on the third cause of action against Defendants, Plaintiff seeks all damages permitted under the NYSHRL plus interest, attorneys' fees and costs;

(4) on the fourth cause of action against Defendants, Plaintiff seeks all damages permitted under the NYSHRL plus interest, attorneys' fees and costs.

Dated: New York, New York
       December 19, 2019

VIRGINIA & AMBINDER, LLP

By: _____/s/_____
        Jack L. Newhouse, Esq.
        40 Broad St., 7th Floor
        New York, New York 10004
        (212) 943-9080
        jnewhouse@vandallp.com

        *Attorneys for Plaintiff*

14