UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

APRIL BALDI,

Case No.: 1:19-cv-7111 (KAM) (ST)

                         Plaintiff,

        -against-

MAGGIO DATA FORMS PRINTING LTD., JOHN
CURTIN, and JOSEPH CAPUANO,

                        Defendants.
-----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS & PROCEDURAL HISTORY ......................................................3

STANDARD OF REVIEW ....................................................................................................8

ARGUMENT ........................................................................................................................10

I.    PLAINTIFF'S TITLE VII & NYSHRL CLAIMS ARE LIMITED BY THE
      STATUTE OF LIMITATIONS......................................................................................10

II.   PLAINTIFF'S *QUID PRO QUO* AND HOSTILE WORK ENVIRONMENT
      CLAIMS FAIL TO STATE A CLAIM ..........................................................................13

III.  PLAINTIFF'S RETALIATION CLAIMS FAIL TO STATE A CLAIM .................18

IV.   PLAINTIFF CANNOT AVAIL HERSELF OF THE CONTINUING
      VIOLATIONS DOCTRINE UNDER TITLE VII AND THE NYSHRL ...................21

CONCLUSION ....................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

Alfano v. Costello,
    294 F.3d 365 (2d Cir. 2002)............................................................... 14

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ........................................................................ 8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)......................................................................... 8

Barnum v. New York City Transit Authority,
    62 A.D.3d 736 (2d Dept. 2009) ....................................................... 15

Bermudez v. Bon Secours Charity Health Sys., Inc.,
    No. 19-CIV.-7836 (AKH), 2020 WL 104992 (S.D.N.Y. Jan. 9, 2020)........................... 19

Bonner v. Guccione,
    178 F.3d 581 (2d Cir. 1999)............................................................. 10

Borrero v. Am. Exp. Bank Ltd.,
    533 F. Supp. 2d 429 (S.D.N.Y. 2008).............................................. 10

Brass v. Am. Film Tech., Inc.,
    987 F.2d 142 (2d Cir. 1993)....................................................... 8 n. 6, 9

Carmody v. City of N.Y.,
    2006 U.S. Dist. LEXIS 83207 (S.D.N.Y. Nov. 13, 2006) ................................. 9

Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.),
    983 F. Supp. 2d 277 (S.D.N.Y. 2013).............................................. 20

Del Castillo v. Pathmark Stores, Inc.,
    941 F. Supp. 437 (S.D.N.Y. 1996) .................................................. 19

Doe v. Anonymous Inc.,
    No. 18-CIV.-10924 (PAC), 2019 WL 2616904 (S.D.N.Y. June 25, 2019)..................... 22

Doe v. Anonymous Inc.,
    794 Fed. Appx. 129 (2d Cir. 2020).................................................. 22

Ellis v. City of New York,
    No. 08-CIV.-6705 (DAB), 2011 U.S. Dist. LEXIS 84104 (S.D.N.Y. July 28, 2011)...... 16

Farrugia v. N. Shore Univ. Hosp.,
    13 Misc. 3d 740 (Sup. Ct. N.Y. Cty. 2006) ................................................................ 12

Fishbein v. Miranda,
    670 F. Supp. 2d 264 (S.D.N.Y. 2009) ..................................................... 8 n. 6, 9

Fitzgerald v. Henderson,
    251 F.3d 345 (2d Cir. 2001) .................................................................................. 17

Gregory v. Daly,
    243 F.3d 687 (2d Cir. 2001) .................................................................................. 14

Harris v. Forklift Sys., Inc.,
    510 U.S. 17 (1993) ................................................................................................. 15

Henderson v. Town of Van Buren,
    15 A.D.3d 980, 789 N.Y.S.2d 355 (4th Dept. 2005) ........................................ 12

Henny v. New York State,
    842 F. Supp. 2d 530 (S.D.N.Y. 2012) ................................................................ 20

Hernandez v. Kaisman,
    Index No. 104989/2007, 2011 N.Y. Misc. LEXIS 2120, (N.Y. Sup. Ct. Apr. 13, 2011). 17

Holowecki v. Fed. Express Corp.,
    440 F.3d 558 (2d Cir. 2006) .................................................................................... 9

Isakov v HASC Ctr., Inc.,
    No. 17-CIV.-5775 (BMC), 2018 WL 1114714 (E.D.N.Y. Feb. 27, 2018) ...................... 21

Jackson v. New York,
    523 Fed. Appx. 67 (2d Cir. 2013) ...................................................................... 22

Karibian v. Columbia Univ.,
    14 F.3d 773 (2d Cir. 1994) .................................................................................. 17

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,
    716 F.3d 10 (2d Cir. 2013) .................................................................................. 18

Langella v. Mahopac Cent. School Dist.,
    No. 18-CIV.-10023 (NSR), 2020 WL 2836760 (S.D.N.Y. May 31, 2020) ...................... 22

Legg v. Eastman Kodak Co.,
    248 A.D.2d 936 (4th Dept.1998) ........................................................................ 12

Lehrman v. New York City Dep't of Educ.,
 51 Misc. 3d 1229(A) (N.Y. Sup. Ct. 2016) ...................................................... 23

Li v. Educational Broadcasting Corp.,
 Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522 (N.Y. Sup. Ct. June 30, 2011).. 16

Liss v. Nassau Cty.,
 425 F. Supp. 2d 335 (E.D.N.Y. 2006) ............................................................ 10

Littlejohn v. City of New York,
 795 F.3d 297 (2d Cir. 2015).................................................................... 9, 19

Lore v. City of Syracuse,
 670 F.3d 127 (2d Cir. 2012)...................................................................... 18

Magnoni v. Smith & Laquercia, LLP,
 701 F. Supp. 2d 497 (S.D.N.Y. 2010) .......................................................... 16

Mandell v. Cty. of Suffolk,
 316 F.3d 368 (2d Cir. 2003)...................................................................... 19

Matter of R & B Autobody & Radiator, Inc. v. New York State Division of Human Rights,
 31 A.D.3d 989, 819 N.Y.S.2d 599 (3rd Dept. 2006) ........................................ 14

Melman v. Montefiore Med. Ctr.,
 98 A.D.3d 107, 946 N.Y.S.2d 27 (1st Dept. 2012)........................................... 17

N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,
 709 F.3d 109 (2d Cir. 2013)........................................................................ 8

Natl. R.R. Passenger Corp. v Morgan,
 536 US 101 (2002) ........................................................................ 10, 12, 21

Pietri v. N.Y.S. Office of Court Admin.,
 936 F. Supp. 2d 120 (E.D.N.Y. 2013) ........................................................... 10

Redd v. N.Y. Div. of Parole,
 678 F.3d 166 (2d Cir. 2012)...................................................................... 16

Reid v. Ingerman Smith LLP,
 876 F. Supp. 2d 176 (E.D.N.Y. 2012) ........................................................... 19

Richardson v. N.Y. State Dep't of Corr. Servs.,
 180 F.3d 426 (2d Cir. 1999)...................................................................... 14

Rozell v. Ross-Holst,
    2007 U.S. Dist. LEXIS 46450 (S.D.N.Y. June 21, 2007).................................................. 15

Sosa v. N.Y.C. Dep't of Educ.,
    368 F. Supp. 3d 489 (E.D.N.Y. 2019) ............................................................................... 9

Sprott v. N.Y. City Hous. Auth.,
    No. 94-CIV.-3818 (PKL), 1999 WL 1206678 (S.D.N.Y. Dec. 16, 1999)....................... 12

Summa v. Hofstra Univ.,
    708 F.3d 115 (2d Cir. 2013).................................................................................... 10, 18

Targum v. Citrin Cooperman & Co., LLP,
    No. 12-CIV.-6909 (SAS), 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ........................ 8

Valtchev v. City of New York,
    400 Fed. Appx. 586 (2d Cir. 2010).................................................................................. 21

Vega v. Hempstead Union Free Sch. Dis.,
    801 F.3d 72 (2d Cir. 2015)....................................................................................... 13 n. 7

Vuono v Consol. Edison of New York, Inc.,
    No. 18-CIV.-1635 (VEC), 2019 WL 2433654 (S.D.N.Y. June 11, 2019) ...................... 21

Whidbee v. Garzarelli Food Spec., Inc.,
    223 F.3d 62 (2nd Cir. 2000).............................................................................................. 12

Wrighten v. Glowski,
    232 F.3d 119 (2d Cir. 2000)............................................................................................. 19

Zako v Encompass Digital Media, Inc.,
    No. 3:19-CIV.-844 (MPS), 2020 WL 3542323 (D. Conn. June 30, 2020)...................... 23

**Statutes**

42 US.C. § 2000e, *et seq.*...................................................................................... 2, 5, 6

42 U.S.C. § 2000e–3(a)........................................................................................................ 19

42 U.S.C. § 2000e–5(e)(1) ................................................................................................... 21

New York Civil Practice Law & Rules § 204............................................................................ 10

New York Civil Practice Law & Rules § 214............................................................................ 12

New York Executive Law § 296............................................................................................... 15

New York Executive Law § 297 ................................................................................ 11, 12

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................... 1, 9

Fed. R. Civ. P. 15 ................................................................................................. 2, 7 n. 5

## PRELIMINARY STATEMENT

Defendants Maggio Data Forms Printing Ltd. (hereinafter "Maggio" or the "Corporate Defendant"), John Curtin (hereinafter "Curtin"), and Joseph Capuano (hereinafter "Capuano") (Maggio, Curtin, and Capuano collectively hereinafter the "Defendants") submit this Memorandum of Law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule") to dismiss Plaintiff's Second Amended Complaint ("PSAC") for failure to state a claim.

Plaintiff April Baldi (hereinafter "Plaintiff") filed a charge of discrimination against the Corporate Defendant with the United States Equal Employment Opportunity Commission ("EEOC") on September 5, 2017 ("EEOC Charge").  She then filed a Verified Complaint against the Corporate Defendant and Curtin (who was not a named Respondent in the EEOC charge) with the New York State Division of Human Rights ("NYSDHR") on December 5, 2018.

While the EEOC apparently never investigated the charge, the NYSDHR did. It determined that "probable cause" exists to believe that Respondents engaged in discrimination on September 9, 2019 and recommended that a public hearing be held pursuant to the New York State Human Rights Law ("NYSHRL").  Plaintiff averred in both the EEOC charge and the Verified Complaint that March 17, 2017 was the last date on which she was allegedly subjected to discrimination.

A public hearing was never held before the NYSDHR, however, as Plaintiff instead sought dismissal of the NYSDHR case for administrative convenience.  Over Defendants' objections, the NYSDHR issued a Recommended Order of Dismissal for Administrative Convenience on October 18, 2019, and a Notice and Final Order on December 3, 2019 dismissing the NYSDHR case for administrative convenience.

New York State law provides, however, that such an election constitutes an annulment of the charge such that it was never filed, and the statute of limitations is not tolled for the period of time the charge was before the NYSDHR.

On December 19, 2019, this case was commenced against the Corporate Defendant, Curtin, and Capuano (who was not a named Respondent in either the EEOC charge or the NYSDHR Verified Complaint) alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the NYSHRL.

Because Plaintiff improperly filed suit before receiving the requisite notice in order to pursue her Title VII claims, on February 21, 2020, Plaintiff amended her complaint to allege that the EEOC issued a notice of right to sue dated February 11, 2020.  This violated Rule 15 because it was filed more than twenty-one (21) days after the initial complaint was served and Plaintiff was required to seek Defendants' written consent or the Court's leave to amend the complaint.

A pre-motion conference was conducted on June 30, 2020, during which the parties agreed that Plaintiff would amend her complaint.

On July 3, 2020, Plaintiff filed the PSAC asserting the same claims and merely providing some additional minimal details concerning the allegations giving rise to her claims.  However, even as amended, both the Title VII claims and NYSHRL claims are improperly pled because they contain allegations outside the applicable statute of limitations periods under each respective law.

With respect to her state law claims, when Plaintiff achieved dismissal of her NYSHRL claims for administrative convenience, as set forth above, she annulled her election to the administrative process such that they are subject to New York's general three (3) year statute of limitations, which is measured from the occurrence of the discrimination, with no tolling for the period during which the claim was pending in the administrative process.

Applying the law to the facts here, Plaintiff's claims are thus time barred to the extent that they relate to alleged acts that precede December 19, 2016, and there are no allegations that any discrimination occurred for the three (3) month period which culminated in Plaintiff's termination for excessive tardiness and absenteeism on March 17, 2017 other than the events which allegedly transpired at a December 22, 2016 holiday party and her ultimate termination.  These allegations alone are not sufficient to state a claim for relief under either Title VII or the NYSHRL.

The same applies to her claims under federal law.   The 300-day period under Title VII for which Plaintiff is permitted to seek redress runs from November 9, 2016 through September 5, 2017, and this period of time covers the same events discussed above.

Further, as set forth below, the continuing violations doctrine does not apply to the case, and Plaintiff cannot invoke same merely by making an incantation that it applies conclusorily.

Accordingly, the Court should dismiss Plaintiff's complaint for failure to state a claim.

### STATEMENT OF FACTS & PROCEDURAL HISTORY

Plaintiff alleges she worked for the Corporate Defendant from approximately September 2013 through March 17, 2017.  See PSAC annexed hereto in the Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl.") ¶ 11, Ex. I at ¶ 17.  She alleges that she was subject to "severe and pervasive" sexual harassment while working for the Corporate Defendant; namely:

(i) Curtin began making "sexual comments" and sexually harassing[1] Plaintiff about six to seven months after she began working there, i.e., in or about March or April 2014, as Plaintiff alleges she commenced employment with the Corporate Defendant in approximately September 2013 (¶ 21)[2];

---

[1] This is a vague and conclusory allegation.

[2] Each allegation shall end with the PSAC's paragraph number.

(ii) Curtin asked Plaintiff to make coffee and stood closer to her, touched her hair, and rubbed her shoulders since early 2014 and continuing until Plaintiff's termination nearly every day, numerous times each week, for her "entire" employment period (¶ 22);

(iii) once in approximately June 2016, Curtin asked Plaintiff to come to his office to ask her to make coffee, and when she asked why, Curtin responded "so I can watch you walk away" (¶ 23);

(iv) Curtin would make unidentified inappropriate and unwelcomed sexual remarks "nearly every day" that he and Plaintiff were in the office together, "numerous times per week (¶ 24);

(v) Curtin often stood close to her and told her that she looks hot or her shirt looks hot and did so "numerous times" starting in early 2014 (¶ 25);

(vi) Curtin made jokes about hooking up and asked her and another female co-worker to have a three way with him, and did so "numerous times" starting in early 2014 (¶ 26);

(vii) Curtin lingered near Plaintiff and asked Plaintiff to guess where his hand was when it was touching an unidentified female co-worker's behind, and began doing this in 2013[3] at least forty (40) times (¶ 27);

(viii) once in 2014 and otherwise "occasionally," Curtin said that he would "wake up with a pimple" when informing Plaintiff that he had dreams about her (¶ 28);

(ix) at unspecified dates and times, but "on more than one occasion," Curtin pulled Plaintiff's hair and asked her whether she did not like having her hair pulled (¶ 29);

(x) once in 2014, Curtin slapped her butt with his hand, which he denied doing (¶¶ 30-31);

---

[3] This is despite the fact that Plaintiff earlier alleged in her original complaint that Curtin began making "sexual comments" and "sexually harassing" Plaintiff about six (6) to seven (7) months after Plaintiff began working for the Corporate Defendant in September 2013.  See Kataev Decl. ¶ 8, Ex. F at ¶¶ 17, 21.

(xi) at unspecified dates and times, the atmosphere in the office often involved sexually charged conversation and women were referred to in sexual and inappropriate ways (¶ 32);

(xii) at unspecified dates and times, Curtin, Capuano, and Robert Maggio often referred to women in unspecified sexual and inappropriate ways and "joked around" about having sex with them (¶ 33);

(xiii) at unspecified dates and times, Plaintiff witnessed Curtin touch other female employees' butts, "hundreds of times since 2014" (¶¶ 34-35);

(xiv) at unspecified dates and times, Curtin engaged in sexual relations with another female employee for years (¶ 36);

(xv) Plaintiff witnessed Curtin and Robert Maggio make out with female employees during the 2014 and 2015[4] holiday parties (¶ 37);

(xvi) Plaintiff was propositioned by Curtin, who attempted to kiss her, at the December 22, 2016 holiday party (¶¶ 38-46); and

(xvii) Capuano, to whom Plaintiff allegedly complained about Curtin at the December 22, 2016 holiday party, later made sexual advances towards Plaintiff on or about December 30, 2016 and sent Plaintiff text messages on January 13 and 20 in 2017 asking her where she is and whether she got her nails done (¶¶ 50, 59-64).

See Id. at ¶¶ 18, 21-40, 59-64.

---

[4] Every allegation preceding this one originally did not state *when* these alleged comments or conduct occurred.  See Kataev Decl. ¶ 9, Ex. G.  In the PSAC, however, Plaintiff conclusorily alleges that all of these comments were made and conduct occurred "since early 2014 and continuing until the end of Plaintiff's employment in March 2017," "every day that [Curtin] was in the office, numerous times each week, for Plaintiff's entire employment," "numerous times, starting in early 2014," "at least forty (40) times during Plaintiff's employment," or "hundreds of times since 2014" (without specifying when in each of the latter allegations).  See Kataev Decl. ¶ 11, Ex. I at ¶¶ 22-35.  As further set forth below, such conclusory statements do not plead sufficient facts for the continuing violation doctrine to apply.

Plaintiff also conclusorily alleges in her complaint that the facts and circumstances that comprise her claim for sexual harassment "started in or about early 2014 and continued until she was terminated in March 2017, and are a 'continuous violation' under Title VII and NYSHRL." Id. at ¶ 70.

Plaintiff was terminated for excessive tardiness and absenteeism, but alleges that other female employees were not disciplined for excessive tardiness and absenteeism and she was actually terminated in retaliation for rebuffing Curtin's and Capuano's alleged sexual advances toward her (despite that she was previously extensively warned and disciplined for excessive tardiness and absenteeism). Id. at ¶¶ 48-53, 60-67. Accordingly, it appears that Plaintiff is attempting to allege claims for *quid pro quo* and hostile work environment.

Plaintiff filed a charge of discrimination against the Corporate Defendant with the EEOC on September 5, 2017 alleging that she was discriminated against between 2013 and March 17, 2017. See Kataev Decl. ¶ 3, Ex. A.

Plaintiff then filed a Verified Complaint at the NYSDHR[5] against the Corporate Defendant and Curtin (who was not a named Respondent in the EEOC charge) on December 5, 2018. See Kataev Decl. ¶ 4, Ex. B. The Verified Complaint similarly avers that March 17, 2017 is the date the most recent or continuing discrimination took place. Id. at 9.

_____

[5] Plaintiff alleges that her claim was "subsequently transferred by the EEOC to the [NYSDHR] in or about September 2018[,]" but this is belied by the fact that:

(i) her EEOC charge was solely filed with the EEOC despite the option on the "charge of discrimination" form to file with a state and/or local agency (see Kataev Decl. ¶ 3, Ex. A at 3); and

(ii) the NYSDHR Verified Complaint that Respondents received indicates that the NYSDHR sent the NYSDHR Verified Complaint to the EEOC for dual filing purposes (see Kataev Decl. ¶ 4, Ex. B at 8), which makes the allegation that the September 5, 2017 EEOC charge was transferred on December 5, 2018 inaccurate (see Kataev Decl. ¶ 4, Ex. B at 10).

The NYSDHR determined on September 9, 2019 following an investigation that "probable cause" existed to believe that Respondents engaged in discrimination and recommended that a public hearing be held pursuant to the NYSHRL.  See Kataev Decl. ¶ 5, Ex. C.  A hearing was never held, however, as Plaintiff instead sought dismissal of the NYSDHR case for administrative convenience on September 27, 2019, less than three (3) weeks after the NYSDHR issued its determination after investigation, which Defendants opposed.  See Kataev Decl. ¶¶ 6-7, Exs. D and E.  Over Defendants' objections, the NYSDHR issued a Recommended Order of Dismissal for Administrative Convenience on October 18, 2019, and a Notice & Final Order on December 3, 2019 dismissing the case for administrative convenience.  See Kataev Decl. ¶ 8, Ex. F.

On December 19, 2019, this case was commenced against the Corporate Defendant, Curtin (who was not a named Respondent in the EEOC charge), and Capuano (who was not a named Respondent in either the EEOC charge or the NYSDHR charge) alleging discrimination and retaliation claims under Title VII and the NYSHRL.  See Kataev Decl. ¶ 9, Ex. G.

On February 21, 2020, Plaintiff amended her complaint[6] to allege that the EEOC issued a notice of right to sue dated February 11, 2020.  See Kataev Decl. ¶ 10, Ex. H.

On July 3, 2020, Plaintiff again amended her complaint with Defendants' consent following the parties' pre-motion conference in anticipation of the instant motion in order to provide more detail concerning when the alleged events occurred.   See Kataev Decl. ¶¶ 10-11, Exs. I and J (redline showing all changes made between first and second amended complaints).

---

[6] Plaintiff's amendment of the complaint was violative of Rule 15 in that it was amended on February 21, 2020 more than twenty-one (21) days after the initial Complaint was served, as it was filed on December 19, 2019 and Defendants waived service on December 23, 2019.  See Docket Entries 1 and 6; see also Fed. R. Civ. P. 15.  Plaintiff was required to seek Defendants' written consent or the Court's leave pursuant to Rule 15(a)(2).

Throughout the course of her entire employment, Plaintiff was repeatedly absent from and tardy to work.  See Kataev Decl. ¶ 13, Ex. K.[7]  The repeated warnings given to her by the Corporate Defendant were of no avail and resulted in her eventual termination because Plaintiff could not be counted on and was thus rendered unqualified to perform in her position. Id.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully;" stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).  A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.  The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." Id.; see also Targum v. Citrin Cooperman & Co., LLP, No. 12-CIV.-6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).  The court must also draw all reasonable inferences in the non-moving party's favor. See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 119–20 (2d Cir. 2013).

---

[7] Plaintiff refers to issues concerning her tardiness and being disciplined for same in her complaint. See Kataev Decl. ¶ 11, Ex. I at ¶¶ 66-69.  Therefore, the court may refer to this exhibit as one incorporated by reference and as documents in plaintiff's possession and of which she had knowledge of and relied on in bringing suit.  See Fishbein v. Miranda, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

"In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" See Fishbein, 670 F. Supp. 2d at 271 (quoting Brass, 987 F.2d at 150.  Thus, in employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them. See Littlejohn v. City of New York, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim ... so long as those filings are ... 'integral to' and 'solely relied' upon by the complaint") (brackets omitted) (quoting Holowecki v. Fed. Express Corp., 440 F.3d 558, 565–66 (2d Cir. 2006)).

To sufficiently plead a claim for hostile work environment, a plaintiff must allege that she: (1) is a member of a protected class; (2) suffered unwelcome harassment such that the workplace was permeated with discriminatory intimidation, ridicule, and insult; (3) was harassed because of her membership in a protected class; (4) the harassment was sufficiently severe or pervasive to alter conditions of her employment and create an abusive work environment; and  (5) there is a specific basis of imputing the harassment to the employer.  See Carmody v. City of N.Y., 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y. Nov. 13, 2006).

To meet the burden for a retaliation *prima facie* claim on a motion to dismiss, "a plaintiff must [allege] (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." See Sosa v. N.Y.C. Dep't of Educ., 368 F. Supp. 3d 489, 516-17 (E.D.N.Y. 2019) (quoting Littlejohn, 795 F.3d at 315–16).

This standard applies to claims brought pursuant to Title VII and the NYSHRL. <u>See</u> <u>Summa v. Hofstra Univ.</u>, 708 F.3d 115, 125 (2d Cir. 2013).  The complaint fails to state a claim upon which relief can be granted for the reasons discussed herein.

## ARGUMENT

## I.   PLAINTIFF'S TITLE VII & NYSHRL CLAIMS ARE LIMITED BY THE STATUTE OF LIMITATIONS

Plaintiff's claims are significantly limited by the statute of limitations under state and federal law. In New York, a plaintiff asserting claims under Title VII must file a charge with the EEOC within 300 days from the date of any act of discrimination or retaliation. <u>See</u> <u>Borrero v.</u> <u>Am. Exp. Bank Ltd.</u>, 533 F. Supp. 2d 429, 435 (S.D.N.Y. 2008) ("Under Title VII, the statute of limitations for filing a charge of discrimination in states such as New York that have an agency with the authority to address charges of discriminatory employment practices is 300 days"). Generally, "only incidents that took place within the timely filing period are actionable." <u>See</u> <u>Natl.</u> <u>R.R. Passenger Corp. v Morgan</u>, 536 US 101, 114 (2002) (hereinafter "<u>Morgan</u>"); <u>see also</u> <u>Liss v.</u> <u>Nassau Cty.</u>, 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006).

Notwithstanding the rule, an individual "can recover for ... conduct [outside the 300-day period] if it is demonstrated that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period." <u>Id.</u> (citing <u>Bonner v. Guccione</u>, 178 F.3d 581, 584 (2d Cir. 1999)).

This doctrine, however, does not apply to "discrete acts of discrimination, even if they are related to acts alleged in timely filed charges." <u>See</u> <u>Pietri v. N.Y.S. Office of Court Admin.</u>, 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013).  Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  <u>See</u> <u>Morgan</u>, 536 U.S. at 113.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  <u>Id.</u>

The charge, therefore, must be filed within the 300-day time period after the discrete discriminatory act occurred.  Id.

Here, Plaintiff filed her EEOC charge on September 5, 2017.  See Kataev Decl. ¶ 9, Ex. G at ¶ 4; see also Kataev Decl. ¶ 3, Ex. A at 3 (date stamped September 5, 2017).  Thus, the 300-day period under Title VII that Plaintiff is permitted to complain about any discrete acts of discrimination or retaliation runs from November 9, 2016 through September 5, 2017.

Because the only allegations that fall within that time frame include the same allegations discussed in Section I, *supra*, i.e., the December 22, 2016 holiday party through the March 17, 2017 termination date, the same analysis applies to conclude that the complained-of conduct is insufficient to state a claim under Title VII.

Her NYSHRL claims are similarly barred, but for a different reason. The NYSHRL provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction … unless such person had filed a complaint hereunder … , provided that, where the division has dismissed such complaint on the grounds of administrative convenience, …, such person shall maintain all rights to bring suit **as if no complaint had been filed with the division**. At any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the division may request that the division dismiss the complaint and annul his or her election of remedies so that the human rights law claim may be pursued in court, and the division may, upon such request, dismiss the complaint on the grounds that such person's election of an administrative remedy is annulled. Notwithstanding [New York Civil Practice Law & Rules (hereinafter "CPLR") § 204(a)], if a complaint is so annulled by the division, upon the request of the party bringing such complaint before the division, such party's rights to bring such cause of action before a court of appropriate jurisdiction **shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division**.

See New York Executive Law (hereinafter "N.Y. Exec. L.") § 297(9) (emphasis added).

In other words, while a complainant may annul his election to the administrative process at the NYSDHR prior to a hearing and then proceed to court, see N.Y. Exec. L. § 297(9); Whidbee v. Garzarelli Food Spec., Inc., 223 F.3d 62, 75–76 (2nd Cir. 2000); Legg v. Eastman Kodak Co., 248 A.D.2d 936, 937 (4th Dept.1998), if such annulment is made, any judicial proceedings are subject to New York's general three (3) year statute of limitations, measured from the occurrence of the discrimination, with no tolling for the period in which the claim was pending in the administrative process. See N.Y.Exec. L. § 297(9); Henderson v. Town of Van Buren, 15 A.D.3d 980, 789 N.Y.S.2d 355 (4th Dept. 2005); Sprott v. N.Y. City Hous. Auth., No. 94-CIV.-3818 (PKL), 1999 WL 1206678 (S.D.N.Y. Dec. 16, 1999).

As such, and critical to this motion, the annulment operates as if no complaint was ever filed with the NYSDHR in the first place.

Here, Plaintiff annulled her election to pursue the administrative process pursuant to the NYSHRL and filed a complaint in this Court on December 19, 2019.  See Kataev Decl. ¶ 9, Ex. G.  There is a three (3) year statute of limitations period for NYSHRL claims.  See CPLR § 214(2).  Thus, only conduct occurring on December 19, 2016 or later can be used to support her claim of quid pro quo, hostile work environment or retaliation.  See Farrugia v. N. Shore Univ. Hosp., 13 Misc. 3d 740, 746 (Sup. Ct. N.Y. Cty. 2006) (citing Morgan, 536 US at 113).

Accordingly, Plaintiff's claims must be limited to the time period of November 9, 2016 through the date of her termination for her Title VII claims and December 19, 2016 through the date of her termination for her NYSHRL claims.

## II.   PLAINTIFF'S *QUID PRO QUO* AND HOSTILE WORK ENVIRONMENT CLAIMS FAIL TO STATE A CLAIM

Alternatively, dismissal of Plaintiff's *quid pro quo* and hostile work environment claims under NYSHRL and Title VII is warranted because they fail to state a claim.[8]

The only actionable conduct that falls within the statutory period under either statutory scheme amounts to the three (3) month period between December 19, 2016 and March 17, 2017, which is comprised merely of Plaintiff's attendance at the holiday party on December 22, 2016. See Kataev Decl. ¶ 11, Ex. I at ¶ 38.  These allegations are not sufficient to state a claim for relief under the NYSHRL for *quid pro quo* or hostile work environment.

Plaintiff merely alleges that at the holiday party on December 22, 2016, Curtin followed Plaintiff into the bathroom, knocked on the door of the stall, then waited outside the bathroom for Plaintiff to come out, at which time he allegedly attempted to (and necessarily failed, by inference) bring her into an empty office with him.  See Id. at ¶¶ 39-43.

Plaintiff refused to go into the office and Curtin allegedly said "it will be all pleasure for you." Id. at ¶¶ 44-45.  Plaintiff then allegedly sent and received text messages from another employee, told Capuano about what happened, and asked Capuano to walk her to her car.  Id. at ¶¶ 46-47.

On December 28, 2016, Plaintiff received a notice stating that she could no longer take any unscheduled days off until September 30, 2017, as Defendants' policy only provided for five (5) such days and she had accumulated twenty-two (22) days off over the year.  Id. at ¶¶ 53, 57.  She claims that she was thus no longer allowed to use accrued vacation time to cover unscheduled absences, and that this was done in retaliation for rebuffing Curtin's advances.  Id. at ¶¶ 54-56.

---

[8] Discrimination claims under Title VII and NYSHRL are analyzed under the same standards. See Vega v. Hempstead Union Free Sch. Dis., 801 F.3d 72, 88 (2d Cir. 2015).

She alleges that she received another notice concerning her unscheduled days off, i.e., absences from work, in December 2016, giving rise to the inference that Plaintiff continued to fail to appear for work.  Id. at ¶ 58.  Plaintiff alleges further that Capuano began making various unspecified "advances" toward Plaintiff and references numerous vague text messages he sent her, all of which she ignored.  Id. at ¶¶ 59-64.  On February 22, 2017, Plaintiff allegedly was sent home for arriving to work six (6) minutes late despite the fact that other female employees that also arrived late were not similarly reprimanded.  Id. at ¶¶ 66-68.  On March 10, 2017, after Plaintiff requested Capuano's permission to come in at 10:00 AM (which he granted), Capuano terminated Plaintiff when she arrived at work.  Id. at ¶ 69.

In order to prevail on a complaint of sexual discrimination by reason of sexual harassment creating a hostile work environment, a plaintiff must establish that (1) she belongs to a protected group; (2) she was the subject of unwelcome sexual harassment; (3) the harassment was based on gender; (4) the sexual harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. See Matter of R & B Autobody & Radiator, Inc. v. New York State Division of Human Rights, 31 A.D.3d 989, 819 N.Y.S.2d 599 (3rd Dept. 2006).

The conduct constituting the hostile work environment must (1) be "objectively severe or pervasive," (2) be subjectively perceived as "hostile or abusive," and (3) occur because of a protected characteristic. See Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); see also Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 437 (2d Cir. 1999).

14

Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Under Executive Law § 296, "[a] hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See Barnum v. New York City Transit Authority, 62 A.D.3d 736, 737-738 (2d Dept. 2009) (citations omitted). "[T]he conduct must both have altered the conditions of the victim's employment by being subjectively perceived as abusive by the plaintiff, and have created an objectively hostile or abusive environment--one that a reasonable person would find to be so." Id. "To recover against an employer for the discriminatory acts of its employee, the plaintiff must demonstrate that the employer became a party to such conduct by encouraging, condoning, or approving it." Id.

Moreover, under Executive Law § 296, it is a defense to a claim of harassment arising from the conduct of a supervisory employee that the employer "exercised reasonable care to prevent and correct promptly [the] discriminatory conduct . . . and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. Id.

To state a claim under the *quid pro quo* theory, Plaintiff must show that a tangible employment action resulted from her failure to submit to Capuano's sexual advances. See Rozell v. Ross-Holst, 2007 U.S. Dist. LEXIS 46450, *13 (S.D.N.Y. June 21, 2007).

Here, the only actionable allegations are those concerning the December 2016 holiday party, certain alleged comments made by Curtin and Capuano, and those surrounding her termination in March 2017.  Baldi's claim fails for several reasons.

First, even accepting the handful of timely allegations as true, they do not remotely constitute objectively severe or pervasive conduct.  None of the alleged comments are outrageous, and the allegations of infrequent hair touching, and a single instance of slapping Plaintiff's buttocks is not sufficiently pervasive to be actionable under the law.

Indeed, courts have regularly dismissed sex-based hostile work environment claims with far more egregious facts than the instant matter.  See, e.g., Redd v. N.Y. Div. of Parole, 678 F.3d 166, 177 (2d Cir. 2012) ("[E]ven more intimate or more crude physical acts—a hand on the thigh, a kiss on the lips, a pinch of the buttocks—may be considered insufficiently abusive to be described as 'severe' when they occur in isolation."); Li v. Educational Broadcasting Corp., Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522, at *14-15 (N.Y. Sup. Ct. June 30, 2011) (dismissing hostile work environment claim under the NYCHRL (which at the time of the alleged conduct in this case had a lower standard than the NYSHRL), where co-worker stroked plaintiff's arm and said "Asian skin is so soft" and "you love it when a hot guy like me touches you," and, on a later occasion, grabbed plaintiff's buttocks); Ellis v. City of New York, No. 08-CIV.-6705 (DAB), 2011 U.S. Dist. LEXIS 84104, at *24-25 (S.D.N.Y. July 28, 2011) (dismissing hostile work environment claim under the NYCHRL where supervisor sniffed then kissed plaintiff's hand, asked her if her husband was "big like him," and asked her to dinner); Magnoni v. Smith & Laquercia, LLP, 701 F. Supp. 2d 497, 505-06 (S.D.N.Y. 2010) (finding that plaintiff's uncorroborated testimony of daily sexual harassment by plaintiff's supervisor along with admissions by plaintiff's supervisor that he told plaintiff explicit details of his sex life, called her "voluptuous," and touched her knees

on occasion was not enough to constitute a hostile work environment under the NYCHRL); Hernandez v. Kaisman, Index No. 104989/2007, 2011 N.Y. Misc. LEXIS 2120, at *25 (N.Y. Sup. Ct. Apr. 13, 2011) (dismissing hostile work environment claim under the NYCHRL where defendant sent sexually explicit emails to the office, walked around in his underwear, discussed his sex life with plaintiffs, and had female visitors to his office after hours). Because the foregoing cases contained allegations with substantially more egregious conduct than the alleged incidents here, and were analyzed under the broader NYCHRL, this complaint must similarly be dismissed.

Further, even if members of the Company's management made the alleged comments (which they did not), they are nothing more than stray remarks and do not express any sex-based animus. See Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 125, 946 N.Y.S.2d 27, 39 (1st Dept. 2012) ("[s]tray remarks such as these, even if made by a decision maker, do not, without more, constitute evidence of discrimination") (citations omitted).

Accordingly, for all the foregoing reasons, Plaintiff's Title VII discrimination claims must be dismissed for failure to state a claim.

Plaintiff's *quid pro quo* claim fares no better. The gravamen of a *quid pro quo* claim is that a tangible job benefit is linked to an employee's acceptance or rejection of a supervisor's sexual advances. See Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir. 2001) (citing Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994)).

Here, Plaintiff conclusorily alleges that her refusal to participate in a "sex culture" at the Corporate Defendant is what led to her termination. In support, she alleges that she was terminated for coming in late on March 17, 2017 without alleging any sexual advances made by the Defendants.

Indeed, Plaintiff merely alleges that Capuano texted her on January 13 and January 20 in 2017 asking her where she was and whether she got her nails done; this is not enough to state a claim for *quid pro quo* sexual harassment.  Even if it was, which it is not, Plaintiff alleges that Capuano provided Plaintiff with a vacation day at her request despite the fact she never responded to his messages asking where she was and whether she got her nails done.  This defeats her claim that a tangible job benefit, i.e., remaining employed, was linked to her acceptance of his advances, i.e., Capuano's text messages.  The fact is that Plaintiff expressly concedes that there was absolutely no linkage between the January 2017 text messages in which Capuano merely asked where she was and whether she got her nails done and her March 2017 termination.

Accordingly, after examining solely the allegations which are not barred by the statute of limitations imposed on account of Plaintiff's annulment of her election of remedies, Plaintiff's allegations fail to state a claim upon which relief could be granted as to her claims for *quid pro quo* and hostile work environment, warranting dismissal.

## III.    PLAINTIFF'S RETALIATION CLAIMS FAIL TO STATE A CLAIM

Plaintiff's retaliation claims under the NYSHRL and Title VII must also be dismissed for several reasons.

In order to establish a *prima facie* case of retaliation, a plaintiff must provide evidence that "(1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)); see also Summa, 708 F.3d at 125.

Title VII prohibits retaliation against two kinds of protected activity: "participation" in investigations into discrimination and "opposition" to conduct prohibited by the statute. See Littlejohn, 795 F.3d at 316 (citing 42 U.S.C. § 2000e–3(a)).

Plaintiff's complaint is bereft of any participation in an investigation or opposition to prohibited conduct that would qualify as protected activity. See Kataev Decl. at ¶ 11, Ex. I at ¶¶ 29 (Plaintiff was allegedly visibly uncomfortable when her hair was pulled, but did not allege she said anything); 31 (Plaintiff confronted Curtin on an unspecified date about her butt being slapped a couple of weeks after it happened which, as discussed *supra*, is outside the statute of limitations), 34-35 (Plaintiff allegedly observed other women being inappropriately touched but does not allege she opposed this).

An allegation that a plaintiff was terminated for declining sexual advances by members of management at the Company does not give rise to a retaliation claim, but rather to a potential *quid pro quo* sexual harassment claim. See Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) (holding that rejecting sexual advance is not a protected activity for purpose of retaliation claim); see also Del Castillo v. Pathmark Stores, Inc., 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996) (same).

The only possible allegation of protected activity is Plaintiff's alleged complaint to *Capuano* at the December 22, 2016 holiday party regarding *Curtin's* alleged advances to her. See Id. at ¶ 45. However, even accepting that this was engagement in protected activity, Plaintiff cannot prove that there was a causal connection between this incident and her subsequent termination two (2) months later by *Capuano* for being late.

19

Indeed, though Plaintiff alleges that Capuano made sexual advances toward Plaintiff two days after this incident, this allegation and the text messages are insufficient to state a claim for retaliation under Title VII or the NYSHRL because no causal connection can be inferred between these events in light of Plaintiff's conceded and repeated tardiness to work.

Even assuming *arguendo* that Plaintiff has sufficiently alleged a *prima facie* retaliation claim (which she has not), glaringly obvious from Plaintiff's own allegations in the complaint, there exists a legitimate, non-retaliatory reason for the adverse employment actions taken against Plaintiff.  Plaintiff alleges two discrete adverse employment actions: (i) no longer being allowed to use vacation days towards her unscheduled days off on December 28, 2016 (see Kataev Decl. ¶ 11, Ex. I at ¶ 53); and (ii) her termination on March 17, 2017 (see Kataev Decl. ¶ 11, Ex. I at ¶ 69).

Neither of these alleged adverse employment actions occurred under circumstances giving rise to an inference of retaliation.  Indeed, courts routinely hold that an employee's inability to get to work on time (or at all) are legitimate, non-retaliatory reasons for termination (or other adverse employment action).  See Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.), 983 F. Supp. 2d 277, 287 (S.D.N.Y. 2013) (tardiness and absence a sufficient nondiscriminatory reason for termination); Henny v. New York State, 842 F. Supp. 2d 530, 554 (S.D.N.Y. 2012) (same).

Accordingly, after examining solely the allegations which are not barred by the statute of limitations imposed on account of Plaintiff's annulment of her election of remedies, Plaintiff's allegations fail to state a claim upon which relief could be granted as to her retaliation claims warranting dismissal.

Plaintiff's retaliation claims under both Title VII and the NYSHRL thus fail as a matter of law.

IV.    **PLAINTIFF CANNOT AVAIL HERSELF OF THE CONTINUING VIOLATIONS DOCTRINE UNDER TITLE VII AND THE NYSHRL**

The Supreme Court has held that courts may consider the entire scope of a hostile work environment claim for purposes of assessing liability, including behavior alleged outside the statutory time period, *so long as* an act contributing to that hostile environment takes place within the statutory time period under Title VII.  See Morgan, 536 U.S. at 105.

A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." See 42 U.S.C. § 2000e–5(e)(1).  In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.  See Morgan, 536 U.S. at 118.  A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.  Id. at 120.

The continuing violation doctrine provides an exception to the 300-day filing period, allowing plaintiffs to sue based on adverse acts that would otherwise be time-barred but "were part of a continuing policy and practice of prohibited discrimination." See Valtchev v. City of New York, 400 Fed. Appx 586, 588 (2d Cir. 2010).  The Plaintiff bears the burden of establishing the applicability of the continuing violations doctrine.  See Isakov v HASC Ctr., Inc., No. 17-CIV.-5775 (BMC), 2018 WL 1114714, at *4 (E.D.N.Y. Feb. 27, 2018).

The courts in this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances."  See Vuono v Consol. Edison of New York, Inc., No. 18-CIV.-1635 (VEC), 2019 WL 2433654, at *6 (S.D.N.Y. June 11, 2019) (requiring justification for invoking continuing violations doctrine).

Moreover, the Second Circuit has held that allegations of "separate instances of alleged unlawful conduct, occurring at different times and under different circumstances, without a non-conclusory factual connection—rather than a common policy under which all the actions were carried out" are insufficient to invoke the continuing-violation doctrine. See Jackson v. New York, 523 Fed. Appx. 67, 69 (2d Cir. 2013).

Here, the only timely allegations consist of those involving the December 22, 2016 holiday party. See Kataev Decl. ¶ 11, Ex. I at ¶ 38. The remaining allegations concerning Curtin's[9] comments and conduct in 2014 and 2014, preceding the holiday party, are never repeated and Plaintiff never alleges *once* that Curtin made any such comments or engaged in such conduct on or after November 9, 2016, when the window to her timely claim opened, such that she can avail herself of allowing this Court to consider acts beyond the 300-day period under Title VII.

Numerous courts have broadly held as much in the Second Circuit. See Langella v. Mahopac Cent. School Dist., No. 18-CIV.-10023 (NSR), 2020 WL 2836760, at *6 (S.D.N.Y. May 31, 2020) ("At bottom, Plaintiff has failed to allege at least one act contributing to his hostile work environment claim that occurred within the 300-day filing period"); Doe v. Anonymous Inc., No. 18-CIV.-10924 (PAC), 2019 WL 2616904, at *4 (S.D.N.Y. June 25, 2019), aff'd, 794 Fed. Appx. 129 (2d Cir. 2020) ("Stating in a conclusory fashion that Defendants failed to pay or promote her *through October 2015* and that the continuing violation thus applies does not save her untimely

---

[9] Individual Defendant Capuano's conduct, i.e., that he allegedly made unspecified sexual advances toward Plaintiff, and sent text messages to Plaintiff asking her where she was and whether she got her nails done, all fall within the statutory time frame under both Title VII and the NYSHRL because Plaintiff only alleges that his conduct began on December 30, 2016. See Kataev Decl. ¶ 11, Ex. I at ¶ 59. Defendants submit that this alleged conduct fails to state a claim. More importantly, Capuano's alleged conduct, which is different than Curtin's alleged conduct, cannot be used to permit this Court to look beyond the 300-day statutory period because those acts are not part of the same hostile work environment practice as Plaintiff alleges Curtin engaged in.

claims"); see also Zako v Encompass Digital Media, Inc., No. 3:19-CIV.-844 (MPS), 2020 WL 3542323, at *4 (D. Conn. June 30, 2020) (Because Zako does not allege any specific discriminatory policy or practice at Encompass, and makes only conclusory allegations in an attempt to invoke[10] the continuing violation doctrine, the doctrine does not apply. So any events occurring before January 23, 2018 are time-barred …").

The allegations in these cases, in which the courts have rejected the continuing violations doctrine applied, are no different than the allegations in this case, i.e., "since early 2014 and continuing until the end of Plaintiff's employment in March 2017," "every day that [Curtin] was in the office, numerous times each week, for Plaintiff's entire employment," "numerous times, starting in early 2014," "at least forty (40) times during Plaintiff's employment," or "hundreds of times since 2014," without specifying when in each of the latter allegations.  As such, this Court should similarly find that the foregoing conclusory allegations are nothing but a thinly veiled attempt to invoke the continuing violations doctrine, which must be rejected.

The Court's analysis with respect to Plaintiff's NYSHRL claims should yield the same result.  See Lehrman v. New York City Dep't of Educ., 51 Misc. 3d 1229(A) (N.Y. Sup. Ct. 2016) (rejecting invocation of continuing violations doctrine for NYSHRL claim).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's complaint in its entirety for failure to state a claim upon which relief can be granted.

---

[10] The Plaintiff in this case attempts to make the same incantation to invoke the continuing violations doctrine.  See Kataev Decl. ¶ 11, Ex. I at ¶ 70 ("The facts and circumstances that comprise Plaintiff's claim for sexual harassment started in or about early 2014 and continued until she was terminated in March 2017, and are a **continuous violation** under Title VII and NYSHRL") (emphasis added).  This Court should reject this and the other conclusory allegations as the court in Zako did.

Dated:   Lake Success, New York
          July 24, 2020

**MILMAN LABUDA LAW GROUP PLLC**

By:   */s/   Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*