UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

APRIL BALDI,

Plaintiff,    Docket No.: 1:19-cv-7111 (KAM)(ST)

v.

MAGGIO DATA FORMS PRINTING LTD., JOHN CURTIN, and JOSEPH CAPUANO,

Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

VIRGINIA & AMBINDER, LLP
Jack L. Newhouse, Esq.
Alanna R. Sakovits, Esq.
40 Broad Street, 7th Floor
New York, New York 10004

*Attorneys for Plaintiff*

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTS ............................................................................................................................................ 1

PLEADING STANDARD ............................................................................................................. 5

ARGUMENT ................................................................................................................................. 6

POINT I:
PLAINTIFF'S CLAIMS ARE NOT TIME BARRED ................................................................. 6

POINT II:
PLAINTIFF ALLEGED FACTS SUFFICIENT TO STATE A CLAIM
FOR SEXUAL HARASSMENT UNDER TITLE VII AND NYSHRL ...................................... 10

      A.      Plaintiff Adequately Pled a Cause of Action for Sexual Harassment
              under Title VII ............................................................................................... 13

      B.      Plaintiff Adequately Pled a Cause of Action for Sexual Harassment
              under NYSHRL ............................................................................................. 22

POINT III:
PLAINTIFF ALLEGED FACTS SUFFICIENT TO STATE A CLAIM
FOR RETALIATION UNDER TITLE VII AND NYSHRL ....................................................... 23

CONCLUSION ............................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                    <u>PAGE</u>

**<u>Federal Cases</u>**

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)..........................................................................................27

*Amin v. Akzo Nobel Chems., Inc.*,
282 F. App'x. 958 (2d Cir. 2008) ................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................5

*Benzinger v. Lukoil Pan Ams., LLC*,
2020 U.S. Dist. LEXIS 48688 (S.D.N.Y. 2020)........................................................28

*Bermudez v. City of New York*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011).........................................................................27

*Brown v. Coach Stores*,
163 F.3d 706 (2d Cir. 1998).........................................................................................15

*Burlington Indus. v. Ellerth,*
524 U.S. 742 (1998).....................................................................................................14

*Cavalotti v. Daddyo's BBQ, Inc.*,
2018 U.S. Dist. LEXIS 154918 (E.D.N.Y. 2018)......................................................25

*Crawford v. Metro. Gov't of Nashville & Davidson Cty.*,
555 U.S. 271 (2009).....................................................................................................24

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000)........................................................................................24

*Deravin v. Kerik*,
335 F.3d 195 (2d Cir. 2003).........................................................................................15

*Dey v Colt Constr. & Dev. Co.*,
28 F.3d 1446 (7th Cir. 1994) .......................................................................................17

*Doe v. Anonymous Inc.*,
2019 US Dist LEXIS 107886 (S.D.N.Y. 2019)..........................................................9

*Duplan v. City of New York*,
888 F.3d 612 (2d Cir. 2018)................................................................................................23, 24

*EEOC v. New Breed Logistics*,
783 F.3d 1057 (6th Cir. 2015) ...................................................................................................26

*El Sayed v. Hilton Hotels Corp.*,
627 F.3d 931 (2d Cir. 2010)........................................................................................................28

*Espinal v. Goord*,
558 F.3d 119 (2d Cir. 2009)........................................................................................................29

*Farmer v. Shake Shack Enters., LLC*,
2020 U.S. Dist. LEXIS 128272 (S.D.N.Y. 2020)......................................................23, 24, 27, 28

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004)........................................................................................................27

*Fitzgerald v. Henderson*,
251 F.3d 345 (2d Cir. 2001)........................................................................................................25

*Forkin v. Local 804 Union (IBT)*,
394 F. Supp. 3d 287 (E.D.N.Y. 2019) ........................................................................................23

*Galabya v. New York City*,
202 F.3d 636 (2d Cir. 2000)........................................................................................................27

*Gallagher v. J Delaney*,
139 F.3d 338 (2d Cir. 1998)........................................................................................................15

*Garcia v. Lewis*,
2005 U.S. Dist. LEXIS 11955 (S.D.N.Y. 2005) .........................................................................25

*Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*,
252 F.3d 545 (2d Cir. 2001)........................................................................................................28

*Gorzynski v. Jetblue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010)....................................................................................................28, 29

*Gregory v. Daly*,
243 F.3d 687 (2d Cir. 2001)........................................................................................................14

*Harris v. Forklift Sys.*,
510 U.S. 17 (1993)..........................................................................................................13, 14, 16

iii

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010)...........................................................................................24

*Holcomb v. State Univ. of N.Y. at Fredonia*,
698 F. App'x 30 (2d Cir. 2017) ......................................................................................28

*Holtz v. Rockefeller & Co.*,
258 F.3d 62 (2d Cir. 2001)..............................................................................................15

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018)........................................................................25, 26

*Ingrassia v. Health & Hosp. Corp.*,
130 F. Supp. 3d 709 (E.D.N.Y. 2015) ............................................................................24

*Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*,
2015 U.S. Dist. LEXIS 130116 (E.D.N.Y. 2015) ...........................................................28

*Johnson v. MediSys Health Network*,
2011 U.S. Dist. LEXIS 156828 (E.D.N.Y. 2011) ...........................................................25

*Karibian v. Columbia Univ.*,
14 F.3d 773 (2d Cir. 1994)..............................................................................................14

*Kantor-Hopkins v. Cyberzone Health Club*,
2007 U.S. Dist. LEXIS 66820 (E.D.N.Y. 2007)..............................................................25

*Kleehammer v. Monroe County*,
583 F. App'x 18 (2d Cir. 2014).......................................................................................28

*Kotcher v. Rosa & Sullivan Applicane Ctr.*,
957 F.2d 59 (2d Cir. 1992)..............................................................................................25

*Langella v. Mahopac Cent. Sch. Dist.*,
2020 US Dist LEXIS 95588 (S.D.N.Y. 2020) ...................................................................9

*Laurin v. Pokoik*,
2005 WL 911429 (S.D.N.Y. 2005)..................................................................................25

*Leibovitz v. NY City Tr. Auth.*,
252 F.3d 179 (2d Cir. 2001)............................................................................................17

*Little v. Nat'l Broad. Co., Inc.*,
210 F. Supp. 2d 330 (S.D.N.Y. 2002).............................................................................25

*Littlejohn v. City of NY*,
795 F.3d 297 (2d Cir. 2015)...........................................................................................23, 24

*Lockhart v. Hofstra Univ.*,
123 F. App'x 31 (2d Cir. 2005) ...................................................................................27

*Magnoni v. Smith & Laquercia, LLP*,
701 F.Supp.2d 497 (S.D.N.Y. 2010) ...........................................................................20

*Manoharan v. Columbia University College of Physicians & Surgeons*,
842 F.2d 590 (2d Cir. 1988) .........................................................................................24

*Martin v. State Univ. of N.Y.*,
704 F. Supp. 2d 202 (E.D.N.Y. 2010) .........................................................................25

*Meder v. City of New York*,
2007 U.S. Dist. LEXIS 30874 (E.D.N.Y. 2007) .........................................................27

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) .......................................................................................................13

*Messer v. Fahnestock & Co.*,
2008 US Dist LEXIS 93572 (E.D.N.Y. 2008) .......................................................17, 18

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ...........................................................................11, 12, 22

*Mondschein v. NY 101, Inc.*,
2020 US Dist LEXIS 46171 (E.D.N.Y. 2020) .............................................................15

*National Railroad Passenger Corporation v Morgan*,
536 U.S. 101 (2002) ...................................................................................................6, 7

*Oncale v. Sundowner Offshore Servs.*,
523 U.S. 75 (1998) .......................................................................................................14

*Patton v. Keystone RV Co.*,
455 F.3d 812 (7th Cir. 2006) .......................................................................................20

*Petrosino v. Bell Atl.*,
385 F.3d 210 (2d Cir. 2004) ..................................................................................6, 7, 14

*Pucino v. Verizon Communications, Inc.*,
618 F.3d 112 (2d Cir. 2010) .........................................................................................14

*Redd v. NY State Div. of Parole*,

678 F3d 166 (2d Cir. 2012) ...................................................................................13, 14, 15, 20

*Russo v. New York Presbyterian Hosp.*,
972 F. Supp. 2d 429 (E.D.N.Y. 2019) .................................................................................11

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ...............................................................................................................6

*Schiano v. Quality Payroll Sys.*,
445 F.3d 597 (2d Cir. 2006) ................................................................................................15

*Selevan v. New York Thruway Authority*,
584 F.3d 82 (2d Cir. 2009) ....................................................................................................5

*Sethi v. Narod*,
12 F. Supp.3d 505 (E.D.N.Y. 2014) ....................................................................................27

*Stathatos v. Gala Resources, LLC*,
2010 US Dist LEXIS 50511 (S.D.N.Y. 2010) .....................................................................17

*Sumner v. U.S. Postal Serv.*,
899 F.2d 203 (2d Cir. 1990) ................................................................................................25

*Tang v. Glocap Search LLC*,
2015 U.S. Dist. LEXIS 123764 (S.D.N.Y. 2015) ...............................................................24

*Torres v. Pisano*,
116 F3d 625 (2d Cir. 1997) .................................................................................................16

*Univ. of TX. SW Med. Ctr. v. Nassar*,
570 U.S. 338 (2013)..............................................................................................................28

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)........................................................................................23, 24, 28

*Walters v. MedBest Med. Mgmt.*,
2015 U.S. Dist. LEXIS 23828 .............................................................................................29

*Wahlstrom v. Metro-North Commuter R.R.*,
89 F.Supp.2d 506 (S.D.N.Y. 2000) .....................................................................................16

*Weber v. City of New York*,
973 F. Supp. 2d 227 (E.D.N.Y. 2013) ...........................................................................28, 29

*Williams v. NY City Dept. of Educ.*,
2019 US.Dist.LEXIS 147789 (S.D.N.Y. 2019) .................................................................6, 25

vi

*Wright v. Monroe Cmty. Hosp.*,
493 F.App'x 233 (2d Cir. 2012) ..................................................................24

*Yerdon v. Henry*,
91 F.3d 370 (2d Cir. 1996) ..........................................................................27

*Yu v. City of NY*,
792 F App'x 117 (2d Cir. 2020) .....................................................................6

*Zako v. Encompass Digital Media, Inc.*,
2020 US Dist LEXIS 114387 (D.Conn. 2020) ...............................................9

*Zann Kwan v. Andalex Grou*,
737 F.3d 834 (2013) ...................................................................................28


**State Cases**

*Golston-Green v. City of NY*,
2020 NY Slip Op 02768 (2d Dept. 2020) ....................................................10

*Hernandez v. Kaisman*,
103 A.D.3d 106 (1st Dept. 2012) ......................................................20, 21, 22

*Lehrman v. New York City Dep't of Educ.*,
2016 NY Slip Op 50878[U] (Sup Ct, Nassau County 2016) ..........................9

*Matter of Lozada v. Elmont Hook & Ladder Co. No. 1*,
151 A.D.3d 860 (2d Dept. 2017) ...................................................................7

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107 (1st Dept. 2012) ...................................................................19

*Williams v. N.Y.C. Hous. Auth.,*,
61 A.D.3d 62 (1st Dept. 2009) ..............................................................22, 23

**STATUTES & REGULATIONS**

29 C.F.R. § 1604.1(a)(2) ............................................................................14

29 C.F.R. § 1604.11 ...................................................................................13

42 U.S.C. § 2000e-2(a)(1) ..........................................................................13

42 U.S.C. § 2000e-5(e) .................................................................................6

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 5

N.Y. Exec. Law § 296(1)(h) .............................................................................. *passim*

N.Y. Exec. Law § 297(5) .........................................................................................6

N.Y. Exec. Law § 300................................................................................11, 12, 13, 23

N.Y.C. Admin. Code § 8-130 .................................................................................12

## PRELIMINARY STATEMENT

Plaintiff April Baldi ("Plaintiff") submits this memorandum of law in opposition to Defendants' – Maggio Data Forms Printing, Ltd. ("Maggio), John Curtin ("Curtin"), and Joseph Capuano ("Capuano") (collectively "Defendants") – Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth below, Plaintiff's SAC contains detailed allegations sufficient to support her claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").

## FACTS

Plaintiff was employed by Defendants as a receptionist from approximately September 2013 to March 17, 2017. [SAC, ¶ 17]. On December 22, 2016, Plaintiff attended Maggio's holiday party. [*Id.*, ¶ 38]. During the party Plaintiff went to the bathroom. [*id.*, ¶ 39]. Defendant John Curtin, the Vice President of Manufacturing and Plant Manager for Maggio, followed her into the bathroom, knocked on the stall while she was peeing, waited outside the bathroom for Plaintiff to come out, backed Plaintiff into a wall and tried to kiss her, when she refused, he asked her to have sex with him in a co-worker's office, attempting to persuade her by saying "it will be all pleasure for you." [*Id.*, ¶¶ 39-45]. Plaintiff refused and kept walking. [*Id.*, ¶ 45].

Prior to December 22, 2016, Defendant Curtin had a long history of making unwelcome sexual advances on Plaintiff. Since early 2014, Curtin would ask Plaintiff to make coffee for him five to six times per day, nearly every single day they were in the office together through the end of Plaintiff's employment in March 2017. [*Id.*, ¶ 22]. Curtin used the coffee request as an opportunity to stand very close to Plaintiff, to touch her hair and rub her shoulders. [*Id.*]. Although Curtin would normally come to Plaintiff's desk to ask her to make coffee or yell the order from

1

his office, there were a few times when Curtin asked Plaintiff to come to his office in order for her to take his coffee order. [*Id.*, ¶ 23]. When Plaintiff would ask why she had to come to his office, Curtin would respond "so I can watch you walk away." [*Id.*, ¶ 23].

Curtin made numerous inappropriate remarks to Plaintiff throughout her employment. For instance, on numerous occasions Curtin stood close to Plaintiff and told her that she looks "so hot" or that her "shirt looks hot" on her. [*Id.*, ¶ 25]. On numerous occasions since 2014, Curtin repeatedly joked about how he wanted to "hook up" with Plaintiff and asked her to have a "three way" with him. [*Id.*, ¶ 26].[1] Occasionally, Curtin told Plaintiff that he dreamt about her and would "wake up with a pimple," alluding to the fact that he was sexually interested in her. [*Id.*, ¶ 28]. Curtin would also make inappropriate sexualized jokes. At least 40 times since 2013, Curtin asked Plaintiff "guess where my hand is?" while his hand was on a female co-worker's buttocks. [*Id.*, ¶ 27]. Similarly, in front of Plaintiff, more than one hundred times, Curtin directed other female employees to "move to the left a little" then "move to the right a little" and finally "move back" where his hand was waiting to touch the female employees [*Id.*, ¶ 35]. Often Curtin would then say to Plaintiff, "am I making you jealous?" [*Id.*].

On more than one occasion, Curtin pulled Plaintiff's hair until she was visibly uncomfortable and then would ask her "what's the matter? You don't like your hair being pulled?" [*Id.*, ¶ 29]. Shortly after the 2014 Christmas party, Curtin slapped Plaintiff's buttocks when she

---

[1] Incredibly, in response to the allegation that Curtin solicited Plaintiff to participate in a "three way," Defendants claimed in their position statement to NYSDHR that "Baldi's reference to a three (3) way actually references a telephonic conference call which was work-related." [*See* Kataev Decl., Exhibit C, at pp. 12 and 20 of the exhibit (within the exhibit, pages 6 and 14 of the Final Investigation Report and Basis for Determination by NYSDHR)]. Meaning, Defendants admit that Curtin asked Plaintiff to participate in a "three way," but maintain that Plaintiff simply misunderstood Curtin who was purportedly only referring to an innocuous work-related conference call. Common sense must prevail, solicitations for orgies and work-related conference calls are not concepts that get confused. Ultimately, Defendants' cavalier offering of such an implausible excuse reflects upon the unapologetic display of machismo driving Defendants' office culture.

was standing next to the printer. [*Id.*, ¶ 30]. Plaintiff was shocked and embarrassed by this. [*Id.*, ¶ 31]. When she finally felt able to confront him, Curtin denied it. [*Id.*].

Plaintiff alleges that the office atmosphere was driven by sexually charged conversations between managers and owners, such as Defendant Curtin, Joe Capuano, and Robert Maggio. [*Id.*, ¶ 32]. Curtin, Capuano and Robert Maggio often referred to women in sexual and inappropriate ways and spoke about having sex with women. [*Id.*, ¶ 33]. Plaintiff saw Curtin and Robert Maggio making out with female employees at the Maggio holiday parties. [*Id.*, ¶ 37]. During the 2014 or 2015 holiday party, Robert Maggio was making out with two female employees at the same time. [*Id.*, ¶ 37]. Curtin also had sex with a female co-worker on and off for years. [*Id.*, ¶ 36].

It is within this context and atmosphere that Curtin followed Plaintiff into the women's bathroom at the 2016 holiday party and propositioned Plaintiff for sex. Adding to this nightmare, was the text message from Plaintiff's co-worker, the same co-worker that was having sex on and off with Curtin, warning Plaintiff that she should "go home its not gonna be just him it will be others next." [*Id.*, ¶ 48]. Afraid for her safety, Plaintiff went to Defendant Capuano, Plaintiff's direct supervisor and Customer Service Manager, and told him what happened with Curtin. [*Id.*, ¶¶ 49-50]. She asked Capuano to walk her to her car. [*Id.*, at ¶ 50]. On their way to Plaintiff's car, Curtin drove by in his car, honked his horn, rolled down the window and yelled "It's your last chance! But you would rather have Joe." [*Id.*, ¶ 51]. No legitimate investigation into Curtin's actions ever took place as Plaintiff was never questioned. [*Id.*, ¶ 52].

On December 28, 2016, six days after Plaintiff rejected Curtin at the holiday party, Plaintiff was issued a notice informing her that she can no longer take any "unscheduled days off until September 30, 2017," and ceased allowing her to use vacation days to cover an unanticipated sick days. [*Id.*, ¶¶ 53, 55]. From the time Plaintiff started working at Maggio in 2013, Maggio's practice

was to allow its employees to use vacation time to cover unscheduled absences. [*Id.*, ¶ 54]. The December 28, 2016 notice was issued in retaliation for Plaintiff's refusal to participate in Maggio's sex culture and to coerce Plaintiff to change her mind and participate in it.  [*Id.*, ¶ 56].  In September 2016, prior to the holiday party, Plaintiff was issued a notice stating she had 22 unscheduled absences when she is only permitted five. [*Id.*, ¶ 57]. Despite being 17 absences over the limit, Maggio never stopped allowing Plaintiff to use vacation days to cover unscheduled absences and only issued her a warning at the end of her benefits year (*i.e.,* September of each year). [*Id.*].  After the 2016 holiday party, Plaintiff was issued the notice the moment she reached her maximum unscheduled absences, in December 2016 two months after her benefits year started.  [*Id.*, ¶ 58].

Two days after receiving the December 28, 2016 notice, Defendant Capuano, the manager Plaintiff went to for help, made sexual advances on Plaintiff. [*Id.*, ¶ 59]. Capuano, like Curtin, also creepily lingered by Plaintiff's desk. [*Id.*, ¶ 60]. Plaintiff rejected Capuano's advances. [*Id.*, ¶ 61]. In response to Plaintiff's rejection, Capuano texted Plaintiff, "You girls are all alike. You never take the opportunity when it's there. Sleep tight sleeping beauty."  [*Id.*, ¶ 62].

On Friday January 13, 2017 at 7:25 p.m., Capuano texted Plaintiff "Where you at girly girl". [*Id.*, ¶ 63]. On Friday night January 20, 2017 at 8:18 p.m., Capuano texted Plaintiff "Wat up baby. Did you get your nails done?" [*Id.*]. Plaintiff ignored both text messages from Capuano. [*Id.*, ¶ 64]. On January 23, 2017, Plaintiff requested a vacation day to avoid an unscheduled absence in case she stayed sick.  [*Id.*, ¶ 65]. Capuano granted her request for a vacation day but wrote "Gee, it's a good thing I answer text messages unlike some people."  [*Id.*]. When Plaintiff asked what he meant by that, Capuano wrote, "I texted you Friday and you never responded. No worries. I put you in for a vacation day. Feel better."  [*Id.*].

4

On February 22, 2017, Plaintiff was stuck in traffic. Before her shift started, she informed Capuano that she was going to be a little late. [*Id*., ¶ 66]. Capuano told her not to come in. [*Id*., ¶ 66]. Other employees, including the co-worker who was having sex with Curtin, who participated in Defendant Maggio's sex culture were subject to different rules and were not reprimanded for showing up late. [*Id*., ¶¶ 67-68]. Even Plaintiff was subject to different rules prior to her outright rejection of Curtin at the December 22, 2016 holiday party and after she ignored Capuano's inappropriate text messages on successive Friday nights in January 2017. [*Id*., ¶¶ 53-58].

On March 17, 2017, Plaintiff asked to come in at 10:00 a.m. because her stomach was hurting in the morning. [*Id*., ¶ 69]. She asked Capuano if she could use one of her remaining vacation days. [*Id*.]. Capuano told her to come in at 10:00 a.m. [*Id*.]. When Plaintiff got to work, Capuano fired her. [*Id*.]. Plaintiff alleges that she was ultimately terminated for refusing to participate in Defendants' sex culture. [*Id*., ¶ 20].

## PLEADING STANDARD

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient facts that if accepted as true 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When analyzing the sufficiency of a complaint under Rule 12(b)(6), courts "construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Selevan v. New York Thruway Authority*, 584 F.3d 82,

88 (2d Cir. 2009) (citations omitted). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the reasons set forth below, Plaintiff has alleged detailed facts sufficient to support her claims for sexual harassment and retaliation under Title VII and NYSHRL.

## ARGUMENT

### POINT I
### PLAINTIFF'S CLAIMS ARE NOT TIME BARRED

To bring a claim under Title VII, an aggrieved employee must file an administrative complaint within 300 days of the alleged discriminatory conduct. See 42 U.S.C. § 2000e-5(e). "When . . . a plaintiff's allegations of discrimination extend beyond the 300-day limitation period, the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v. Bell Atl.*, 385 F.3d 210, 214 (2d Cir. 2004). Claims under NYSHRL must be brought within three years.  N.Y. Exec. Law § 297(5).

It is well established that "in a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino*, 385 F.3d at 220 (quoting *National Railroad Passenger Corporation v Morgan*, 536 U.S. 101, 117 (2002)); *Yu v. City of NY*, 792 F App'x 117, 118 (2d Cir. 2020) (citing *Petrosino*); *Williams v. NY City Dept. of Educ.*, 2019 US.Dist.LEXIS 147789, at *20 (S.D.N.Y. 2019) ("…the creation of a hostile work environment over time is the quintessence of a continuing violation.") (citing cases). In *Petrosino*, the Second Circuit affirmed the district court's decision to apply the continuing violation doctrine to the plaintiff's hostile work environment claims "[b]ecause Petrosino does point to some allegedly gender-hostile actions occurring [during the limitation period]." *Petrosino*, at 220.

The same standard applies under NYSHRL. As stated by the New York State Appellate Division, Second Department, "a hostile work environment claim, by its very nature, is predicated on a series of separate acts that collectively constitute an unlawful discriminatory practice (see *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 117 (2002)). Thus, under the 'continuing violation' doctrine, even though one of those acts might have occurred outside of the limitations period, the claim will be considered to be timely as long as one of the acts occurred within the limitations period (*id.*, at 117-118)." *Matter of Lozada v. Elmont Hook & Ladder Co. No. 1*, 151 A.D.3d 860, 861-862 (2d Dept. 2017) (the Second Department also cites to the Second Circuit's decision in *Petrosino*).

Here, Plaintiff alleges that Curtin's practice of asking Plaintiff to make coffee so that he can touch her hair and rub her shoulders occurred nearly every day from early 2014 until the end of her employment in March 2017. [SAC, ¶ 22]. Plaintiff alleges that from early 2014 through March 2017, Curtin made inappropriate and unwelcomed sexual remarks nearly every day, numerous times per week. [*Id.*, ¶ 24]. Plaintiff specifically alleges some of the comments that Curtin made and their general frequency. [*Id.*, ¶¶ 25-29]. Accordingly, Plaintiff alleges that the same harasser, committed the same harassing acts both before and during the limitation period.

The holiday party incident, which was also perpetrated by Curtin, occurred on December 22, 2016 during the limitations period. Plaintiff alleges that for years leading up to this incident, Curtin made lewd comments about having sex with Plaintiff in addition to numerous other sexually devious acts. During the 2016 holiday party incident, Curtin attempted to make his fantasy a reality, forcibly trying to kiss Plaintiff and explicitly requesting to engage in sexual acts with Plaintiff. Curtin's menacing conduct during the 2016 holiday party is another unwelcomed sexually hostile act in a series of unwelcomed sexually hostile acts by Curtin directed at Plaintiff.

7

Plaintiff's hostile work environment claims are not merely based on Curtin's conduct. Plaintiff alleges facts to support a finding that Maggio maintained an unmitigated sexually charged atmosphere and corporate culture perpetrated by Maggio's managers who unabashedly engaged in hypersexualized behavior publicly.  [SAC, ¶¶ 19, 37 (observed Curtin kissing female employees at holiday parties and observed Robert Maggio kissing two female employees at a holiday at the same time), 34-35 (observed Curtin touching the butts of other female co-workers), 32-33 (personally heard managers engaged in sexually charged conversations, including joking about having sex with women in the office), 36 (knowledge that Curtin was having sex with one of her female co-workers), 51 (after Plaintiff rejected Curtin at the 2016 holiday party and went to Capuano for safety and to walk her to her car, Curtin yelled "This is your last chance! But you would rather have Joe [Capuano]."), 52 (despite telling Capuano what happened at the 2016 holiday party, no investigation into Curtin was conducted)].

Furthermore, the allegations against Capuano, including the inappropriate text messages, are inseparable from Maggio's misguided hypersexualized culture. Defendants obviously attempt to downplay the actual language in Capuano's text messages, ignoring completely the text where Capuano writes "you girls are all alike, You never take the opportunity when it's there. Sleep tight sleeping beauty" and describing the other text messages as merely "asking [Plaintiff] where she is and whether she got her nails done." [Def. Memo, pp. 6, 22 n.9]. Capuano was not innocently trying to find out where Plaintiff was at 7:25 p.m. on a Friday night when he texted "where you at girly girl." Likewise, Capuano was not innocently inquiring at 8:18 p.m. on a Friday night whether she got her nails done when he wrote "Wat up baby. Did you get your nails done?"  Capuano's bold and inappropriate sexual advances on Plaintiff are consistent with and add to Maggio's hypersexualized culture.

Defendants argue that the continuing violation doctrine does not apply in this case, citing to several materially distinct cases. [Def. Memo, pp. 22-23 (*Langella v. Mahopac Cent. Sch. Dist.*, 2020 US Dist LEXIS 95588, at \*16 (S.D.N.Y. 2020) (finding that plaintiff failed to allege a single act that contributed to his hostile work environment claim during the limitations period);[2] *Doe v. Anonymous Inc.*, 2019 US Dist LEXIS 107886, at \*11 (S.D.N.Y. 2019) (finding that the plaintiff's failure to pay and failure to promote allegations are discrete acts that are different from the plaintiff's discrimination, retaliation, and hostile work environment claims. Here, Plaintiff Baldi alleges Curtin engaged in the same exact conduct before and during the limitation period.); *Zako v. Encompass Digital Media, Inc.*, 2020 US Dist LEXIS 114387, at \*12-13 (D.Conn. 2020) (finding that the plaintiff did not point to any policy or practice of age discrimination and relies on discrete acts of failure to promote and termination to invoke the continuing violation doctrine); *Lehrman v. New York City Dep't of Educ.*, 2016 NY Slip Op 50878[U], \*2 (Sup Ct, Nassau County 2016) (involving a single discriminatory act that occurred outside the statute of limitations period and the only incidents that occurred within the limitations period were effects of the prior discriminatory act and not an independent discriminatory act)].

Defendants compare the facts in this case to those in the foregoing cases by blindly labeling Plaintiff's allegations "conclusory." Defendants give five examples of Plaintiff's "conclusory" allegations. [Def. Memo, p. 5 n.4, p. 23]. Not one is conclusory. For instance, Plaintiff alleges that "[s]ince early 2014 and continuing until the end of Plaintiff's employment in March 2017, Curtin would . . . stand very close to her, to touch her hair, and rub her shoulders. Curtin would do this nearly every day that he was in the office, numerous times each week, for Plaintiff's entire

---

[2] Interestingly, Plaintiff and Defendants rely on the same portion of the *Langella* decision. Defendants cite to this portion hoping the Court will agree that Plaintiff in this case also failed to assert a single fact during the limitation period that contributed to Plaintiff's sexual harassment claim. As explained, Plaintiff alleged numerous facts.

employment." [SAC, ¶ 22]. These are facts based on Plaintiff's personal knowledge and experience, not unsupported conclusions. The allegation that Curtin engaged in this conduct "nearly every day" until the end of her employment in March 2017 supports the conclusion that this conduct continued into the undisputed limitations period.

In light of the foregoing, more than sexual harassing act occurred during the statutory period and Plaintiff respectfully requests that the Court find the continuing violation doctrine applicable to Plaintiff's allegations of sexual harassment.

**POINT II**
**PLAINTIFF ALLEGED FACTS SUFFICIENT TO STATE A CLAIM**
**FOR SEXUAL HARASSMENT UNDER TITLE VII AND NYSHRL**

As a preliminary matter, Defendant incorrectly asserts that Title VII and NYSHRL claims are "analyzed under the same standards." [Def. Memo, p. 13 n.8 and pp. 13-15]. In 2019, the NYSHRL was amended ("2019 Amendments"). Pursuant to the amended NYSHRL, the severe or pervasive standard does not apply to claims filed under NYSHRL after October 11, 2019. Exec. Law § 296(h); 2019 N.Y. ALS 160 (amendment applies to claims filed after October 11, 2019); *Golston-Green v. City of NY*, ___A.D.3d___, n 3, 2020 NY Slip Op 02768, *7 (2d Dep't 2020) (citing L. 2019, ch 160, §§ 16(b) and (d)). Plaintiff filed this action on December 19, 2019.  In support of dismissal, Defendants ignore the 2019 Amendments and cite to numerous cases that are no longer good law. [Def. Memo, pp. 14-17].

The applicable version of NYSHRL states, it shall be an unlawful discriminatory practice:

> For an employer . . . to subject any individual to harassment because of an individual's . . . sex . . . *regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims*. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of an individual's membership in one or more of these protected categories. *The fact that such individual did not make a complaint*

10

> ***about the harassment to such employer . . . shall not be determinative of whether such employer shall be liable***. Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared. It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination ***with the same protected characteristic or characteristics*** would consider petty slights or trivial inconveniences. (emphasis added).

Exec. Law § 296(1)(h)

The NYSHRL, which calls for a liberal construction, was amended to broaden its interpretation, and to disassociate its interpretation from that of the federal civil rights laws:

> The provisions of this article shall be construed liberally for the accomplishment of the ***remedial*** purposes thereof, ***regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct***. Nothing contained in this article shall be deemed to repeal any of the provisions of the civil rights law or any other law of this state relating to discrimination . . . .

Exec. Law § 300 (emphasis added); Newhouse Decl., Ex. A (NYS Assembly Bill A08421).

The very purpose of the 2019 Amendments were "to amend the executive law, in relation to *increased protections* for protected classes and special protections for employees who have been sexually harassed." *See* NYS Assembly Bill A08421, at p. 2 (emphasis added).

The NYSHRL clearly calls for an interpretation more in-step with that of the New York City Human Rights Law ("NYCHRL") than Title VII. Indeed, the city, state and federal anti-discrimination laws used to be analyzed under the same standard until the passage of the Local Civil Rights Restoration Act of 2005, which required NYCHRL be construed liberally to accomplish its broad and remedial purpose. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-112 (2d Cir. 2013) (holding that NYCHRL discrimination and retaliation claims must be analyzed independently from Title VII and pre-2019 Amendment NYSHRL claims

11

because following the passage of the Restoration Act it was "amended . . to require that its provisions 'be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'") (citations omitted); *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429 (E.D.N.Y. 2019) (same). Following this legislation, the Second Circuit mandated a broadened interpretation of NYCHRL:

> For many years, we construed the NYCHRL to be coextensive with its federal and state counterparts. . . . As amended, the NYCHRL requires an independent analysis. See Restoration Act § 1; Loeffler, 582 F.3d at 278. Nonetheless, district courts continued -- erroneously -- to apply federal standards to NYCHRL claims. . . . In amending the NYCHRL, the City Council expressed the view that the NYCHRL had been "construed too narrowly" and therefore "underscore[d] that the provisions of New York City's Human Rights Law are to be construed ***independently from similar or identical provisions of New York state or federal statutes***." Restoration Act § 1. To bring about this change in the law, the Act . . . amended the NYCHRL to require that its provisions "be ***construed liberally*** for the accomplishment of the uniquely broad and ***remedial purposes thereof***, ***regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed***." Restoration Act § 7 (amending N.Y.C. Admin. Code § 8-130).

*Mihalik*, 715 F.3d at 108-109  (emphasis added).

Virtually identical to the changes that occurred to the NYCHRL under the Restoration Act, following the 2019 Amendments, the NYSHRL is to be: (i) "construed liberally"; (ii) "for the accomplishment of the remedial purposes thereof"; (iii) construed independently of federal civil rights law regardless of textual similarity; and (iii) "to maximize deterrence of discriminatory conduct." *See* Exec. Law § 300; NYS Assembly Bill A08421.

While the 2019 Amendments mandate that it be construed independently from, and more liberally than, the federal civil rights laws—regardless of textual similarity—it draws no such distinction from the NYCHRL. *See id*. As such, the NYSHRL, which nearly identically tracks the

liberal construction language of the NYCHRL, must be construed in the same liberal manner as its local counterpart. *See* Exec. Law § 300 ("The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof . . . in order to maximize deterrence of discriminatory conduct."). As explained below, Plaintiff has sufficiently pled her claims under Title VII, and as such, has properly pled claims under the more liberal NYSHRL.

## A. Plaintiff Adequately Pled a Cause of Action for Sexual Harassment under Title VII

"Title VII prohibits an employer from 'discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of,' inter alia, 'such individual's . . . sex." *Redd v. NY State Div. of Parole*, 678 F3d 166, 174-175 (2d Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)). "'The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, 'which includes requiring people to work in a discriminatorily hostile or abusive environment.'" *Redd*, 678 F.3d at 175 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986))).

According to the EEOC's guidelines "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . (3) such conduct has the purpose or effect of . . . creating an intimidating, hostile, or offensive working environment." 29 C.F.R. 1604.11; *Redd*, 678 F.3d at 175. "'For sexual harassment to be actionable, it must be sufficiently severe or pervasive,' *Meritor*, 477 U.S. at 67--both subjectively and objectively, see, e.g., *Harris*, 510 U.S. at 21-22 –'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Redd*, 678 F.3d at 175. To "'establish [a hostile or abusive work environment], a plaintiff need not show that her hostile working environment was both severe <u>and</u> pervasive; only that it was sufficiently severe or sufficiently

pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" *Redd*, 678 F.3d at 175 (2d Cir 2012) (quoting *Pucino v. Verizon Communications, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)) (emphasis in original).

A claim for sexual harassment can also be asserted under a *quid pro quo* theory.[3] "*Quid pro quo* harassment occurs when 'submission to or rejection of [unwelcome sexual conduct] by an individual is used as the basis for employment decisions affecting such individual.'" *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994) (quoting 29 C.F.R. § 1604.1(a)(2)). "The relevant inquiry in a *quid pro quo* case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job." *Karibian.*, 14 F.3d at 778.

When evaluating alleged instances of sexual harassment, each instance cannot be viewed in a vacuum. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1998) (holding that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed," and that the court should consider "all the circumstances" surrounding the allegations.); *Petrosino*, 385 F.3d at 220 ("The objective hostility of a work environment depends on the totality of the circumstances.") (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993); *Redd*, 678 F.3d at 176 ("The court must take care, however, not to view individual incidents in isolation.").

---

[3] Labeling a sexual harassment claim as quid pro quo or hostile work environment, "to the extent that [such labels] are useful at all, are so merely as descriptions of varying workplace conditions that violate Title VII's basic prohibition on sex discrimination in terms or conditions of employment." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citing *Burlington Indus. v. Ellerth,* 524 U.S. 742, 751 (1998)).

"The pleading requirement in discrimination cases are very lenient, even *de minimis*." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Brown v. Coach Stores*, 163 F.3d 706, 710 (2d Cir. 1998)); *Mondschein v. NY 101, Inc.,* 2020 US Dist LEXIS 46171, at *6 (E.D.N.Y. 2020) (citing *Deravin* and *Brown*). This is particularly true in sexual harassment cases where "'[t]he question of whether a work environment is <u>sufficiently</u> hostile to violate Title VII is one of fact.' *Holtz* [*v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)] (emphasis added); see, e.g., *Schiano* [*v. Quality Payroll Sys.,* 445 F.3d 597, 605 (2d Cir. 2006)] ('the line between boorish and inappropriate behavior and actionable sexual harassment . . . is admittedly indistinct, [and] its haziness counsels against summary judgment' (internal quotations omitted)). The interpretation of ambiguous conduct is 'an issue for the jury.' *Gallagher*, 139 F.3d at 347." *Redd*, 678 F.3d at 179.

Here, construing plaintiff's SAC liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff's favor, Plaintiff has more than sufficiently pled facts to meet the low standard for alleging a sexual harassment claim pursuant to Title VII. Defendant Curtin's alleged shoulder rubbing, hair touching, butt slapping, hair pulling, and the sexual and menacing assault during the 2016 holiday party each can constitute a severe act of sexual harassment. *Redd*, at 179 ("The repeated touching of intimate parts of an unconsenting employee's body is by its nature severely intrusive and cannot properly be characterized as abuse that is 'minor.' . . .[I]t is not conduct that is normal for the workplace. When entering a workplace, reasonable people expect to have their autonomy circumscribed in a number of ways; but giving up control over who can touch their bodies is usually not one of them.") (citations omitted)). Plaintiff alleges that the shoulder rubbing and hair touching occurred nearly every day for her entire employment, an allegation that supports a finding of pervasive sexual harassment. Although she only alleges one instance of butt slapping and at least one instance of hair pulling, that is

15

enough to constitute severe sexual harassment. *See Wahlstrom v. Metro-North Commuter R.R.*, 89 F.Supp.2d 506, 511 (S.D.N.Y. 2000) (one incident with inappropriate comments, a bear hug, and slapped her buttocks three times).

The one incident in *Wahlstrom*, though factually different, is not materially distinct from the nightmarish 2016 holiday party incident endured by Plaintiff. *See id*. During the 2016 holiday party, Curtin stalks Plaintiff in the bathroom, knocking on the stall door while Plaintiff was peeing, waits for Plaintiff outside the bathroom, backs her into a wall and forcibly attempts to kiss her, and after being rejected, unabashedly tries to convince Plaintiff to have sex with him by proclaiming "it will be all pleasure for you." Immediately after rejecting Curtin, Plaintiff is warned by her female co-worker, who has had sex with Curtin, "go home its not gonna be just him it will be others next." No reasonable person wants their boss to enter the bathroom to proposition them for sex that may include additional suitors.[4] Indeed, the 2016 holiday party incident itself served as the basis for NYSDHR's finding of probable cause. [Kataev Decl., Ex. C, p. 21].

That Plaintiff was brave enough to refuse Curtin's advances and that Curtin was not depraved enough to physically force her to engage in any further sexual acts does not transform this incident into something minor. "The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Torres v. Pisano*, 116 F3d 625, 631 (2d Cir. 1997) (citing *Harris*, 510 U.S. at 22 (stating that "Title VII comes into play before the harassing conduct leads to a nervous breakdown," and noting that the "appalling conduct" alleged in prior cases should not be taken to "mark the boundary of what is actionable").

---

[4] It is noteworthy that, while Defendants may find such conduct tolerable for a "reasonable" person, they are not only appallingly incorrect, but the NYSHRL standard now calls for the applied standard to rise to the level of what "a reasonable *victim of discrimination* [who is *a woman*] would consider petty slights or trivial inconveniences." *See* Exec. Law § 296(1)(h) (emphasis added).

16

Moreover, Plaintiff alleges that immediately after she rejected Curtin at the holiday party, she went to her supervisor, Joseph Capuano, reported the sexual harassment, and asked him to walk her to her car because she was scared. On her way to the car with Capuano, Curtin callously and unapologetically yells at Plaintiff "It's your last chance! But you would rather have Joe [Capuano]." Despite informing her supervisor of Curtin's conduct, Maggio did not perform any investigation into Curtin and Curtin continued to request Plaintiff make coffee so that he could rub her shoulders, touch her hair, and be close to her.

Adding to this nightmare is the fact that Capuano, the person Plaintiff went to for protection, also sexually harassed her. This fact strongly supports denial of Defendants' Motion to Dismiss. *See Messer v. Fahnestock & Co.*, 2008 US Dist LEXIS 93572, at *32-33 (E.D.N.Y. 2008) ("Put mildly, it is not unreasonable for a factfinder to determine that a supervisor to whom complaints of sexual harassment have been made alters the complaining employee's working conditions for the worse when that supervisor himself subsequently embarks on behavior that might reasonably be viewed as independently sexually harassing.") (citing *Dey v Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1456 (7th Cir. 1994) (incident of alleged harassment would no doubt be even more frightening to a reasonable women in [plaintiff's] position who, prior to that incident, had endured more than two years of verbal harassment.")).

For nearly three years prior to the December 2016 holiday party, Plaintiff was inappropriately touched, the target of sexual comments and "jokes," and observed sexual conduct between management and other employees. Similar facts have been found to support a claim of sexual harassment. *See Leibovitz v. NY City Tr. Auth.*, 252 F.3d 179, 190 (2d Cir. 2001) (". . . evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination."); *Stathatos v. Gala Resources, LLC*, 2010 US Dist

LEXIS 50511, at 4-6, 20-22 (S.D.N.Y. 2010) (summary judgment denied where plaintiffs claimed that harasser touched their shoulders and arms, and were exposed to sexually explicit conversations and photographs, and to sexist jokes); *Messer*, 2008 US Dist LEXIS 93572, at 32-43.

Much of the alleged harassing conduct prior to the 2016 holiday party was perpetrated by Curtin. The dark history between Plaintiff and Curtin cannot be ignored, as Defendants request, when evaluating the objective and subjective severity of every moment of that evening. By way of example, without this history, there would be no way to understand the level of intrusiveness and fright caused when Curtin knocked on Plaintiff's stall door—how Plaintiff was able to anticipate that Curtin's knock was to solicit sex and not to see if the stall is empty, the feeling of hope that by ignoring Curtin's knock Plaintiff avoided confrontation, and the level of Plaintiff's distress the moment she saw Curtin waiting for her outside the bathroom.

In support of dismissal, Defendants argue that "none of the alleged comments are outrageous, and the allegations of infrequent hair touching, and a single instance of slapping Plaintiff's buttocks is not sufficiently pervasive to be actionable under the law." [Def. Memo, p. 16]. Defendants cherry pick and mischaracterize a few of Plaintiff's allegations and argue that even if these allegations are true, they do not constitute objectively severe or pervasive conduct.

Plaintiff's allegations regarding "hair touching" cannot plausibly be described as "infrequent." Plaintiff alleges that Curtin would touch her hair, in addition to rub her shoulders and stand really close to her, nearly every day, five to six times per day, for years. [SAC, ¶ 22]. The comments alleged by Plaintiff that Defendants describe as "[not] outrageous," include: (1) "the pleasure will be all yours" after Curtin forcibly attempted to kiss Plaintiff and tried to convince her to have sex with him in a co-worker's office, (2) repeatedly "joking" about wanting to "hook up" with Plaintiff and asking Plaintiff to have a "three way", (3) telling Plaintiff numerous times

18

that she looks "so hot" or that her "shirt looks hot" on her, (4) telling Plaintiff that he would wake up aroused after dreaming about her, (5) asking Plaintiff, after forcibly pulling her hair until she looks uncomfortable, "what's the matter? You don't like your hair being pulled?", (6) touching the butts of other women in the office and "joking" around about it, asking Plaintiff to "guess where my hand is" or "am I making you jealous?", (7) after being rejected by Plaintiff at the 2016 holiday party and while Plaintiff was being walked to her car by Capuano because she was scared due to Curtin's stalking and attempt to have sex with her, Curtin said "it's your last chance! But you would rather have Joe", (8) Defendant Capuano texting Plaintiff, after Plaintiff rejected Capuano's sexual advances, "You girls are all alike. You never take the opportunity when it's there. Sleep tight sleeping beauty,"[5] and (9) Defendant Capuano texting after 7:00 p.m. on two successive Friday nights "where you at girly girl" and "Wat up baby. Did you get your nails done?" Although Defendants may not view the foregoing comments as "outrageous" or "sex-based", that may be because they are blinded by the sexually charged work environment they think is normal.

Defendants argue that even assuming Plaintiff's allegations are true, the comments alleged are "nothing more than stray remarks and do not express any sex-based animus." [Def. Memo, p. 17]. Defendants fail to substantiate this argument. Defendants cite to the First Department's decision in *Melman* where the plaintiff was suing based on age discrimination. There were three remarks at issue that the First Department found "do not imply any sinister aspersions on older workers." *Melman v. Montefiore Med. Ctr.,* 98 A.D.3d 107, 125 (1st Dept. 2012). Here, there are numerous specific comments made throughout the course of Plaintiff's employment that cannot be interpreted in any way other than as sexual remarks.

---

[5] It is reasonable to infer that Capuano's comment is a gender-based generalization on how young women never take the opportunity to engage in sexual conduct with him.

Defendants cite to a series of cases to support the proposition that "courts have regularly dismissed sex-based hostile work environment claims with far more egregious facts than in this matter." [Def Memo, p. 16]. As explained below, none of the cases cited by Defendants support this proposition. First and foremost, Defendants' reliance on *Redd* is very misleading. The Second Circuit did not affirm the district court's dismissal of the plaintiff's sexual harassment claim. The Second Circuit did exactly the opposite, *vacating the district court's dismissal* of plaintiff's sexual harassment hostile work environment claim on the grounds that the district court failed to draw all reasonable inferences in plaintiff's favor with respect to the severity of the alleged sexual harassment. *Redd,* 678 F.3d at 177-182.[6] The holding in *Redd* supports Plaintiff's arguments.

The facts in *Li v. Educational Broadcasting Corp*. and *Ellis v. City of New York*, which involve a couple instances of harassment are not factually comparable to the daily harassment alleged by Plaintiff over the course of years. The holding in *Magnoni* occurred following a bench trial. *Magnoni v. Smith & Laquercia, LLP*, 701 F.Supp.2d 497, 498 (S.D.N.Y. 2010). The district court found that the plaintiff was not credible and her sexual harassment claim rested largely on her credibility. *Id.* Plaintiff's credibility is not at issue on a motion to dismiss, as Plaintiff's allegations must be credited as true and afforded all reasonable inferences. The holding in *Magnoni* is, thus, completely inapplicable.

Finally, the acts of sexual harassment in *Hernandez v. Kaisman* cannot plausibly be described as "more egregious" than those alleged in this case. Regardless, it is not clear how Defendants can justify relying on *Hernandez* to support the proposition that the trial court

---

[6] In addition, the portion of the *Redd* decision quoted by Defendants is dicta.  It was part of a larger block quote citing the Seventh Circuit's decision in *Patton v. Keystone RV Co.,* 455 F.3d 812, 816 (7th Cir. 2006). The Second Circuit underlined nearly 50% of the block quote, emphasizing the portions that support a finding that courts should err on the side of considering conduct to be sexual harassment. The portion cited by Defendants was not underlined.

dismissed plaintiff's hostile work environment claims under the NYCHRL when the trial court's decision in *Hernandez* dismissing the NYCHRL claims was modified by the First Department to "*reinstate plaintiffs' claim for sexual discrimination brought under the city law* . . . ." *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (1st Dept. 2012) (emphasis added). Defendants do not cite to the First Department's decision. In addition, the holding is *Hernandez* is not instructive on NYSHRL claims, as the 2019 Amendments render the reasoning in the *Hernandez* decisions moot.

Plaintiff also sufficiently alleges facts to support a claim for sexual harassment under a *quid pro quo* theory. Plaintiff alleges that she was subject to inferior conditions of employment after the 2016 holiday party incident, specifically with respect to the implementation of Maggio's attendance policy and use of vacation time. [SAC, ¶ 57-58 (six days after the 2016 holiday party, Maggio issued notice informing Plaintiff that she could no longer take unscheduled days off the moment she reached her maximum unscheduled days off. During the previous benefits year, Defendants did not issue a similar notice until Plaintiff was 17 absences over the limit); 54-56 (Maggio ceased allowing Plaintiff to use vacation days to cover an unscheduled absence, a practice that had been in place since 2013)]. Plaintiff alleges that these practices were not changed for those who, unlike Plaintiff, participated in Maggio's sex culture. [*Id.*, ¶¶ 67-68].

Moreover, on January 23, 2017, after ignoring Capuano's inappropriate text messages transmitted on successive Friday nights, Plaintiff requested a vacation day to avoid an unscheduled absence in case she stayed sick. [*Id.*, at ¶ 65]. Capuano granted her request for a vacation day but wrote "Gee, it's a good thing I answer text messages unlike some people." [*Id.*]. When Plaintiff asked what he meant by that, Capuano wrote, "I texted you Friday and you never responded. No worries. I put you in for a vacation day. Feel better." [*Id.*]. Even though Capuano granted the

21

vacation day, he explicitly links granting Plaintiff a vacation day to responding to his requests to hang out on Friday night after work.

Defendants argue that because Capuano granted Plaintiff's vacation day that no link between a tangible job benefit and Capuano's advances was created. This is incorrect. Although Capuano did not act on it in the moment, a clear link is evident. Unsurprisingly, on February 22, 2017, Capuano told Plaintiff to not come to work even though she was under ten minutes late and texted Capuano before her shift even started that she was stuck in traffic. Likewise, Capuano fired Plaintiff on March 17, 2017 when she asked to come in late because her stomach was hurting her.

A reasonable inference can be drawn—based on the timing of the change in work conditions, the fact that the change was not implemented for those participating in Maggio's sex culture, and Capuano's text messages—that Plaintiff's change in working conditions, culminating in her termination, were a direct result Defendants Curtin and Capuano losing hope that Plaintiff would participate in Defendants' sex culture.

For the foregoing reasons, Plaintiff submits that she adequately pled facts to support her claim of sexual harassment under Title VII.

**B. Plaintiff Adequately Pled a Cause of Action for Sexual Harassment under NYSHRL**

As explained above, a claim under NYSHRL should be assessed under the same standard afforded to NYCHRL claims. Under NYCHRL, a plaintiff must only show that she was "treated 'less well' . . . because of her gender, and that the conduct complained of was neither petty nor trivial." *Mihalik*, 715 F.3d at 113 (citing *Williams*, 61 A.D.3d at 74-78). NYSHRL similarly protects against discrimination based on "inferior terms" of employment. Exec. Law § 296(1)(h). "Whether a statement or incident is "isolated" is "irrelevant" under the NYCHRL. *Hernandez*, 103

22

A.D.3d at 115. Even a single comment can be actionable. *Williams*, 61 A.D.3d at 18 n., 30. For the reasons above, Plaintiff sufficiently alleges a sexual harassment claim under NYSHRL.

## POINT III
### PLAINTIFF ALLEGED FACTS SUFFICIENT TO STATE A CLAIM FOR RETALIATION UNDER TITLE VII AND NYSHRL

In light of the 2019 Amendments to the NYSHRL, retaliation under the statute must be evaluated under the new liberalized standard. NYSHRL not only mandates a liberal interpretation, but prohibits its provisions from being interpreted under the standards applicable to the federal corollary even where their provisions are textually similar. Exec. Law § 300. Notwithstanding this more liberal standard, Plaintiff's Title VII and NYSHRL claims survive under either standard.

At the outset, Defendants incorrectly apply the *McDonnell Douglas* burden-shifting framework.[7] "At the motion to dismiss stage, however, a plaintiff 'is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss.'" *Farmer v. Shake Shack Enters., LLC*, 2020 U.S. Dist. LEXIS 128272, *16-17 (S.D.N.Y. 2020) (quoting *Vega*, 801 F.3d at 84; *see also Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 307 (E.D.N.Y. 2019) ("At the pleading stage, . . . a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case.")). For retaliation claims, "[a]s with discrimination claims, at the motion to dismiss stage, 'the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.'" *Farmer*, 2020 U.S. Dist. LEXIS 128272, at *17 (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 316)). "For a retaliation claim to survive a motion to dismiss, 'the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—

---

[7] *See* Defs. Memo., p. 20 ("Even assuming arguendo that Plaintiff has sufficiently alleged a prima facie retaliation claim . . . there exists a legitimate, non-retaliatory reason for the adverse employment actions taken against Plaintiff.").

against [her], (2) because [s]he has opposed any unlawful employment practice.'" *Farmer*, 2020 U.S. Dist. LEXIS 128272, at *17 (quoting *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90)). The plaintiff's burden is "de minimis." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

First, Plaintiff unequivocally alleged that she engaged in protected activity. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F.App'x 233, 236 (2d Cir. 2012) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). "The scope of such activity is broad: 'When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.'" *Farmer*, 2020 U.S. Dist. LEXIS 128272, at *17 (quoting *Littlejohn*, 795 F.3d at 317 (alteration and second emphasis omitted) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009)). "Protected activity may include both formal and informal complaints, including complaints to management." *Farmer*, 2020 U.S. Dist. LEXIS 128272, at *17 (citing *Crawford*, 555 U.S. at 276; *Tang v. Glocap Search LLC*, 2015 U.S. Dist. LEXIS 123764, 4 (S.D.N.Y. 2015); *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015)); *Amin v. Akzo Nobel Chems., Inc.*, 282 F. App'x. 958, 961 (2d Cir. 2008). "To prove that [s]he engaged in protected activity, the plaintiff need not establish that the conduct [s]he opposed was in fact a violation of Title VII." *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). "However, the plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Id.* (internal quotation marks omitted).

Complaining of sexual harassment to a supervisor or boss is a prototypical example of protected activity.[8] Further, contrary to Defendants' position, Plaintiff's rejection of Defendants' sexual advances constitutes protected activity. "The Second Circuit has never squarely addressed whether rejecting a harasser's sexual advance constitutes 'protected activity' under the opposition clause for purposes of making a retaliation claim." *Williams v. N.Y. City Dep't of Educ.*, 2019 U.S. Dist. LEXIS 147789, at *30-31 (S.D.N.Y. 2019) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir. 2001)). Other circuits are split on this issue.[9] However, Courts have held that "[r]ejecting sexual advances from an employer [ ] constitutes 'protected activity.' The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination. Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct.'" *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 447-448 (S.D.N.Y. 2018) (citing *Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp. 2d 330, 386 (S.D.N.Y. 2002) ("I conclude that rejecting sexual advances from an employer does constitute 'protected activity.'"); *Laurin v. Pokoik*, 2005 WL 911429, at 4 (S.D.N.Y. 2005); *Johnson v. MediSys Health Network*, 2011 U.S. Dist. LEXIS 156828, at 52 (E.D.N.Y. 2011) ("There is no reason to disagree with the view of the majority of courts that allegations that an employee consistently refused her supervisor's sexual advances constitutes 'protected activity' for purposes of a retaliation claim.")).

---

[8] *See Kotcher v. Rosa & Sullivan Applicane Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992) (holding that internal complaints to company management about sexual harassment constitute protected activity); *Cavalotti v. Daddyo's BBQ, Inc.*, 2018 U.S. Dist. LEXIS 154918, *65-66 (E.D.N.Y. 2018) ("Regarding the first element, Plaintiff's complaints regarding the conduct of Mr. Gonzalez constituted protected activity.") (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (holding that protected activity under Title VII includes "informal protests of discriminatory employment practices, including making complaints to management"); *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that informal complaints to supervisors constitute protected activity under Title VII.") (internal quotation marks omitted)); *Kantor-Hopkins v. Cyberzone Health Club*, 2007 U.S. Dist. LEXIS 66820, 10 (E.D.N.Y. 2007) ("Complaining about sexual harassment is a protected activity."); *Garcia v. Lewis*, 2005 U.S. Dist. LEXIS 11955, at *24-25 (S.D.N.Y. 2005).

[9] *See Williams*, 2019 U.S. Dist. LEXIS 147789, at *31 (collecting cases).

As the Court in *Hughes* explained, with respect to Courts that have held that rejecting sexual advances does not constitute protected activity:

> . . . those positions overlook the complex dynamics underlying a work environment fraught with power disparities. Sexual harassment can manifest itself in many forms. Some are less obvious than others but just as invidious. Formally reporting an incident of sexual assault is one form of protected activity, but it is not always available. An individual who is sexually harassed by her supervisor, or someone with clout within the company, faces a Hobson's choice—she is either forced to endure her supervisor's unwanted overtures, or file a complaint that will inevitably bruise his ego and jeopardize her job and career.

*Hughes*, 304 F. Supp. 3d at 448. The Equal Employment Opportunity Commission likewise maintains that resisting a supervisor's sexual advances constitutes a protected activity that would render a resulting materially adverse action by the supervisor in retaliation actionable.[10]

Here, Plaintiff complained of sexual harassment when she went to Capuano, her direct supervisor, and complained of Curtin's sexual harassment immediately at the 2016 holiday party. [SAC, at ¶¶ 49-50]. Furthermore, Plaintiff not only rejected Curtin's sexual advances at the holiday party, but, also rejected Capuano's sexual advances. [*Id.*, at ¶¶ 59, 63]. Plaintiff's allegations that she complained of sexual harassment to her supervisor, and repeatedly rejected sexual advances by her employers, squarely constitutes protected activity within the meaning of the NYSHRL and Title VII. Moreover, as Plaintiff alleges that she reported the sexual harassment to Capuano, and directly rejected the sexual advances of Curtin and Capuano, she clearly alleges facts sufficient to demonstrate that Defendants knew that she had engaged in these protected activities.

---

[10] *See* EEOC Enforcement Guidance on Retaliation and Related Issues, No. 915-004, at § II(A)(2)(e) (2016) (available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues#li_Resisting (last visited August 9, 2020) (citing, *inter alia*, *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (holding that demanding a supervisor stop harassment is protected opposition, i.e., when one "resists or confronts the supervisor's unlawful harassment")).

Plaintiff has further adequately alleged that she suffered adverse employment actions. Here, Defendants terminated Plaintiff's employment, weaponized their ability to deprive Plaintiff of her accrued vacation days, and subjected her to disparate treatment for arriving late to work in retaliation for her complaint about sexual harassment and because she repeatedly refused Defendants' sexual advances. Defendants' termination of Plaintiff is unquestionably an adverse employment action. *See Farmer*, 2020 U.S. Dist. LEXIS 128272, at *17 ("Farmer undisputedly satisfies the first and third elements of a prima facie case . . . she suffered an adverse employment action when she was terminated.") (citing *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004)). Additionally, the alteration in the terms and conditions under which Plaintiff can use her vacation days for unscheduled absences and disparate application of Maggio's attendance policy also constitutes adverse employment actions.[11]

Moreover, Plaintiff has alleged facts overwhelmingly sufficient to allege that her protected activities caused the adverse employment actions taken against her—particularly at this early pleading stage. Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the

---

[11] *See Sethi v. Narod*, 12 F. Supp. 3d 505, 529 (E.D.N.Y. 2014) ("If Plaintiff was deprived of five paid days of vacation each year to which he was entitled, then Plaintiff suffered a materially adverse impact in the terms and conditions of employment sufficient to establish an adverse employment action.") (citing *Lockhart v. Hofstra Univ.*, 123 F. App'x 31, 32-33 (2d Cir. 2005) ("An 'adverse employment action is one that affects the terms, privileges, duration or conditions of employment.'") (quoting *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996)); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (noting that a materially adverse employment action must have an impact on "some tangible job benefits such as compensation, terms, conditions or privileges of employment." (citation and internal quotation marks omitted)); *Meder v. City of New York*, 2007 U.S. Dist. LEXIS 30874, at *14 (E.D.N.Y. 2007) ("I infer that sick days were part of Meder's terms and conditions of employment and that she had to right to take a sick day on the day in question. In such a circumstance, sending a police officer to intimidate Meder for taking a sick day, or to force her to come to work, would effectively deny Meder her right to sick days. Such a material alteration of the terms and conditions of Meder's employment would constitute an adverse employment action."); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) ("The loss of all vacation and sick days—material benefits of her employment with the NYPD—is sufficient to allege a materially adverse employment action under Section 1981.") (citing *Galabya*, 202 F.3d at 640 (listing a "material loss of benefits" as an example of a materially adverse employment action).

employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Nassar*, 570 U.S. at 360). However, even prior to the 2019 Amendments to the NYSHRL, Courts, including the New York Court of Appeals and the Second Circuit, have not yet conclusively resolved whether the but-for causation standard applies to claims under the NYSHRL. *Farmer*, 2020 U.S. Dist. LEXIS 128272, at *36, n.7 ("The Second Circuit has not yet conclusively resolved whether the but-for causation standard applies to claims under the NYSHRL, as it does under Title VII. . . . The New York Court of Appeals has not yet resolved this issue of New York law.") (citing *Holcomb v. State Univ. of N.Y. at Fredonia*, 698 F. App'x 30, 31 (2d Cir. 2017); *Kleehammer v. Monroe County*, 583 F. App'x 18, 21 (2d Cir. 2014); *Zann Kwan*, 737 F.3d at 847 n.7. . . NYSHRL").[12] Nonetheless, Plaintiff has adequately alleged causation under both Title VII and the NYSHRL.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant. *Weber v. City of New York*, 973 F. Supp. 2d 227, 270 (E.D.N.Y. 2013) (citations omitted). "'[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.'" *Weber*, 973 F. Supp. 2d at 270 (quoting *Gorzynski*, 596 F.3d at 110 (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001))); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). "There is no brightline rule for

---

[12] *See Benzinger v. Lukoil Pan Ams., LLC*, 2020 U.S. Dist. LEXIS 48688, *42, n.17 (S.D.N.Y. 2020) ("The Second Circuit has yet to decide explicitly whether the but-for causation standard applies to claims under the NYSHRL, as it does under Title VII."); *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, 2015 U.S. Dist. LEXIS 130116, *53 (E.D.N.Y. 2015) ("It remains unclear whether 'but-for' causation applies to NYSHRL retaliation claims after the Supreme Court's decision in. . .*Nassar*. . .requiring but-for causation in Title VII retaliation cases.") (citations omitted).

how long after a plaintiff has engaged in the protected activity that the adverse action must have occurred to benefit from the inference, but the Second Circuit has held that periods as long as five months are not too long." *Weber*, 973 F. Supp. 2d at 270-71 (citing *Gorzynski*, 596 F.3d at 110-11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship.")); *Walters v. MedBest Med. Mgmt.*, 2015 U.S. Dist. LEXIS 23828, at *24-25 ("Given that this action is only at the pleading stage, and that the Second Circuit has found a passage of six months between the protected activity and retaliatory act to be sufficient, . . . MedBest has failed to demonstrate that Plaintiff's termination three months after filing her complaint is too attenuated such that she could not be entitled to relief.") (citing *Espinal*, 558 F.3d at 129).

Here, Plaintiff pleads facts demonstrating that the protected activity was followed closely by discriminatory treatment, that she suffered disparate treatment following her protected activities, and by alleging clear evidence of retaliatory animus directed against her by the Defendants. The negative changes in the terms and conditions of Plaintiff's employment—namely, the limitations on her vacation days and disparate application of Maggio's attendance policy—occurred in as little as six days after she reported Curtin's sexual harassment to Capuano and rejected Curtin's sexual advances at the 2016 holiday party. [SAC. ¶¶ 51-56].  Additionally, on February 22, 2017, approximately two months after reporting sexual harassment and rejecting her employers' sexual advances, and approximately one month after ignoring Capuano's inappropriate text messages, Capuano told Plaintiff not to come in to work when she informed him that she was stuck in traffic and was going to be a little late. [*Id.*, at ¶ 66]. Plaintiff alleges that other employees who participated in Defendant Maggio's sex culture were subject to different rules and were not

reprimanded for showing up late. [*Id.*, at ¶¶ 67-68]. Plaintiff further alleges that she was even subject to different rules prior to engaging in these protected activities. [*See id.*].

Defendants' animus against Plaintiff for denying their sexual advances is further evidenced by the fact that, after reporting Curtin's sexual harassment and rejecting him, he screamed at her that "It's your last chance! But you would rather have Joe [Capuano]," and that after rejecting Capuano's sexual advances, Capuano immediately sent her a text message stating, "You girls are all alike. You never take the opportunity when it's there. Sleep tight sleeping beauty." [*Id.*, at ¶ 62]. Finally, on March 17, 2017, three months after she reported sexual harassment and rejected sexual advances by her employers, and approximately two months after she ignored Capuano's inappropriate text messages, Capuano denied Plaintiff's request to use one of her remaining vacation days to take off due to illness, and terminated Plaintiff. [*Id.*, at ¶¶ 53-58, 69]. The foregoing allegations are exceedingly sufficient to state a claim that Plaintiff suffered unlawful retaliation within the meaning of the NYSHRL and Title VII.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: New York, New York
August 14, 2020

VIRGINIA & AMBINDER, LLP

By: _____/s/_____
Jack L. Newhouse, Esq.
Alanna R. Sakovits, Esq.
40 Broad St., 7th Floor
New York, New York 10004
(212) 943-9080
jnewhouse@vandallp.com

*Attorneys for Plaintiff*

30